EDWARD WALKER ET AL., APPELLEES, v. COLLINS CONSTRUCTION COMPANY ET AL., APPELLEES: SWIFT & COMPANY, APPELLANT.

FILED APRIL 30, 1931. No. 27695.

*Johnson, Rine & Marshall, Joseph A. Vojir* and *Halligan, Beatty & Halligan,* for appellant.

*E. H. Evans* and *Hoagland & Carr, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This is an action for foreclosure of mechanics' liens. Four plaintiffs, each a subcontractor claiming a lien, joined in one petition, each seeking foreclosure of his respective lien. Another lien claimant was made defendant and filed a cross-petition, seeking foreclosure of its lien. Defendant Swift & Company was the owner of the premises. Collins Construction Company was the general contractor, and, while designated in the petition as a defendant, it was not served and made no appearance in the action. Swift & Company filed a demurrer to the petition, on the ground of misjoinder of causes of action. The demurrer was overruled, and defendant answered over, joining issues with the plaintiffs and cross-petitioner. After hearing, the court found for the plaintiffs and cross-petitioner,

and awarded liens as follows: Edward Walker, $2,348.25; Waltemath Lumber & Coal Company, $20,522.36; C. H. Backers, $2,570.23; Simon Brothers, $501.52; Higbee & Keyes, cross-petitioner, $64.95. Swift & Company, owner of the premises, has appealed.

The first error assigned is that the court erred in overruling the demurrer to the petition. It is clear that there was a misjoinder of causes of action, and that the demurrer should have been sustained. Defendant did not stand upon its demurrer, but elected to answer over and joined issues with the plaintiffs and cross-petitioner. By so doing it waived any error in overruling such demurrer.

In *Genho v. Jackson*, 99 Neb. 1, it was held: "Where a party demurs to a petition because several causes of action are improperly joined, but answers over after an adverse ruling thereon, and goes to trial on the merits of an issue he has elected to join, he waives the error, if any, in such ruling."

Defendant seeks to defeat all the liens on the ground that the contract between it and the general contractor contained the following provision: "Neither the contractor nor any subcontractor, materialman, nor any other person, shall file or maintain a lien, commonly called a mechanic's lien, for materials delivered for use in, or work done in the performance of this contract, and the right to maintain such lien by any or all of the above named parties is hereby expressly waived, except in the event of the failure or refusal of the owner to pay the amount called for by any certificate of the architect, within three days of the date of its tender to the owner for payment. Then, and in such case only, shall any of the above named parties have the right to file and maintain a mechanic's lien." It is the contention of the defendant that each subcontractor is required to ascertain and know the terms of the contract between the owner and the general contractor and is bound thereby.

Some jurisdictions hold to the rule contended for by defendant. We think the better rule, and the one sustained by the great weight of authority, is that a stipulation

against liens in a contract between the owner and the contractor will not deprive the subcontractor of the right to a lien, unless the latter assents or agrees to the stipulation. 40 C. J. 148.

Another objection lodged by defendant against all of the decrees is that the trial court awarded each lienor interest from the date of filing his lien to the date of the entry of judgment. It may be that where a subcontractor performs a stipulated part of the work, or furnishes a stipulated part of the material, for the erection of a building for a gross sum, as soon as he has completed the work or furnished all of the material, interest might then be computed from the date of the last item of work done or material furnished. That is not the case in any of the liens here involved. In each instance the lien represents an account for labor and materials furnished, running over a period of several weeks or months, and, in most instances, with payments or credits thereon. The rule applicable in such case is, as provided by statute, that, where a lien is claimed for an account for material and labor furnished for the construction of a building, in the absence of an agreement to the contrary, interest may be reckoned only from a date six months after the last item. Comp. St. 1929, sec. 45-104; *Platner Lumber Co. v. Theodore*, 120 Neb. 804. It appears that excessive interest was allowed on each of the claims in the instant case. Interest should have been reckoned, in each instance where the lien was properly awarded, from and after six months from the date of the last item.

From the evidence it appears that Swift & Company entered into a contract with the Collins Construction Company for the erection of a produce house in North Platte, costing upwards of $60,000, exclusive of the heating plant. Plaintiff Walker entered into a contract with Collins Construction Company to furnish sand and gravel, to be used in the construction of the building, and also for some hauling of dirt and rubbish, the latter to fill in and level the grounds, so as to bring them to grade about the structure. The last item of hauling was done on March 18, 1929. The

lien was filed May 4, 1929. It is clear that if all of the work was done and material furnished pursuant to one contract the lien was filed in time. Defendant contends that the hauling was done pursuant to a separate contract, and that the last item of sand and gravel furnished was on March 4, 1929, and that the contracts cannot be tacked.

It is a well-settled rule that a lienor may not extend the time for filing his lien by tacking two or more contracts. The question in point is whether the material was furnished and work performed pursuant to one contract or to two separate contracts. The evidence on this point is in conflict. The circumstances, we think, tend rather to support the contention of the plaintiff Walker. While cases of this character are for trial *de novo* in this court, yet, where the evidence is in conflict, the fact that the witnesses were before the trial court, that the court had a better opportunity to observe their demeanor, candor and fairness, and was in a better position to judge of their credibility, will be taken into consideration by this court. Under the circumstances, we are impelled to hold that the evidence sustains the contention of plaintiff Walker.

With reference to the claim of Waltemath Lumber & Coal Company, defendant's principal objection thereto is that the account contains certain items of lumber that were not used in and did not become an integral part of the building, but were used for the erection of sheds, latrines and for forms for concrete and was not consumed in such use; also items for coal that was used to heat the building while in the course of construction and to generate steam to operate a hoist and concrete-mixer.

It is clear that lumber was absolutely necessary in making forms for concrete, used in the construction of the building. Some was used for scaffolding. It was necessary to have a shed in which to house the material, and as an office, for keeping the plans, specifications and records of material furnished and time of employees. Latrines were also a necessary adjunct, and, while the lumber was not wholly consumed in and did not constitute

an integral part of the main structure, such lumber was necessary, in order that the main structure could be erected. Had the owner himself ordered such material and used it for these purposes, even though he had realized some salvage from the lumber not wholly consumed, we doubt if it would be contended that such items were not lienable. That such materials were furnished to the principal contractor and used by it, we think, does not change the situation. The general contractor ordered the material which was necessary to the construction of the main building. It was delivered on the premises and was used for the purpose for which ordered. The fact that it was not wholly consumed is immaterial. If, as appears in the instant case, the contractor sold the salvage and realized something therefrom, he should account to the owner therefor, and the owner had ample opportunity to protect himself by requiring the contractor to furnish bond to account for any salvage.

In *Johnson v. Starrett,* 127 Minn. 138, it was held: "Materials furnished in good faith for the improvement of realty may be lienable though not actually used in the work."

In *Barker & Stewart Lumber Co. v. Marathon Paper Mills Co.,* 146 Wis. 12, it was held, in effect, that materials used directly upon the work or structure and instrumental in producing the final results are lienable if actually consumed and used, although not physically incorporated therein.

In *Emery v. Hertig,* 60 Minn. 54, it was said (p. 57): "It is sufficient for us to say that, whatever may be the conflicting decisions of other tribunals, we are of the opinion that no narrow or limited construction of our mechanic's lien law should be indulged in by the courts, and that the labor and industry of the country should not be hampered by technicalities or harsh interpretations of what was evidently intended to be a just law for the benefit of our industrial pursuits, which tends so materially to the building of cities and towns, and is the embodiment of so much natural justice. He whose property is enhanced

in value by the labor and toil of others should be made to respond in some way by payment and full satisfaction for what he has secured. To accomplish this result is the intent of the lien law."

In the instant case the owner has had the benefit and necessary use of the lumber for the construction of its building. A lien for such lumber so used was properly awarded. With respect to the coal, we have heretofore held that fuel used to heat a building, where it was necessary for the building operation, was lienable. *Crowell Lumber & Grain Co. v. Ryan Co.,* 110 Neb. 225. We perceive no distinction between coal consumed in heating the building and consumed in operating a hoist and mixer used in the process of constructing the building. We think that coal, necessarily used and consumed either in heating the building or in operating machinery used in the construction of the building, was necessary to the completion of the building and is a lienable item.

With respect to the lien of this claimant, there is some contention that the evidence is not sufficient to show that the materials were in fact, used in the construction of the building. It is sufficient that the materials were ordered for the building and delivered to the premises. The law does not require the materialman to remain on the premises and see that every stick of lumber or every sack of cement was actually used in the construction of the building. It appears from the evidence that every load of material was delivered to the contractor upon the premises; that the owner kept an employee on the premises to check and see what materials were furnished and went into the building. There is no evidence that any of this claimant's material, delivered upon the premises for use in the building, was not so used.

In respect to the claim of plaintiff Backers, the petition avers that the materials were furnished and the labor performed pursuant to an oral contract. The evidence, however, shows that there was a written contract between plaintiff and the general contractor which contained the following provision: "The subcontractor agrees—

"(a) To be bound to the contractor by the terms of the agreement, general conditions, drawings and specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the owner. * * *

"Nothing in this article shall create any obligation on the part of the owner to pay to or to see to the payment of any sums to any subcontractor."

The provision of the contract between the owner and the general contractor has been heretofore quoted. Defendant argues that such a provision is not binding upon the subcontractor, since the right to a lien is created by statute. It cites a number of authorities, but none of them is strictly in point. Some of them hold that a provision in a contract between an owner and a general contractor is not binding upon a subcontractor who has not agreed to be bound thereby or who has no knowledge of the provisions of that contract. The weight of authority, and supported by the better reason, is that where a subcontractor agrees to be bound by the provisions of a contract between the owner and the general contractor, and where such contract contains a provision against any lien, either by the principal contractor or the subcontractor, the latter has thereby waived his right to a lien. In such case he is remitted to his remedy against the general contractor for compensation.

In *Early v. Atchison, T. & S. F. R. Co.*, 167 Mo. App. 252, the court of appeals of Missouri held: "The right to enforce a mechanic's lien may be waived by contract, and hence a subcontractor, whose contract with the principal contractor adopted a provision of the latter's contract with the owner by which he waived his right to a mechanic's lien, waived his right to such a lien."

In *Baldwin Locomotive Works v. Edward Hines Lumber Co.*, 189 Ind. 189, the supreme court of that state, in holding a waiver, contained in a building contract, to a right to maintain a lien valid against subcontractors, in the opinion (p. 193) said: "That no public policy is involved is shown by the fact that courts of last resort in four states

have declared statutes void which attempted to nullify stipulations against liens"—citing *Palmer & Crawford v. Tingle*, 55 Ohio St. 423; *Waters v. Wolf*, 162 Pa. St. 153; *Kelly v. Johnson*, 251 Ill. 135, 36 L. R. A. n. s. 573; *John Spry Lumber Co. v. Sault Savings Bank, Loan & Trust Co.*, 77 Mich. 199.

Under the facts and law applicable thereto, we conclude that this plaintiff has waived his right to a mechanic's lien. The judgment of the trial court, awarding him a lien, was erroneous.

With respect to the lien of Simon Brothers, from the record it appears that this claimant agreed with the contractor for the furnishing of material for and putting in place the roof over the main building and on the canopy over the dock. The price agreed upon was $1,300. In the account for which the lien was filed the $1,300 was charged as of date March 1, 1929. The lien was filed May 15, 1929. The evidence shows that the work under the principal contract for $1,300 was not completed until March 18 or March 20. There were some items, subsequent to this, for extra work or labor, over which there is no controversy. From an examination of the record, we reach the conclusion, as did the trial court, that the work on the $1,300 contract was not completed until March 18, and that the lien was filed within the time.

The objection made to the lien of Higbee & Keyes is that it contains items consisting of stove pipe, saw files, buckets, hammer handles, brooms, shovels, mop sticks, white wash brushes, ice picks, cups, saw blades, push brooms, totaling $31.45, which were no part of and did not enter into the construction of the building, and which were not properly lienable.

The rule is laid down by this court in *Crowell Lumber & Grain Co. v. Ryan Co., supra,* wherein it was said in the opinion at page 229: "On the other hand, the following items in the account of J. C. Nitz, to wit, shovel handles, pair gloves, tape, rope, one dozen files, legal cap, box matches, pulley with hook, hammer, brush, sand-screen, lamp chimney, one saw file, in a total amount of $17.40,

should be disallowed." The items complained of in the instant case are of the same general character. They represent tools furnished to the contractor and were not properly consumed in the building. The lien of cross-petitioner seems to be excessive in the amount of $31.45, because of such items included therein.

We find the several lienors entitled to liens as follows: Plaintiff Walker, $2,188.80, with interest thereon at 7 per cent. from September 18, 1929; Waltemath Lumber & Coal Company, $19,086.23, with interest thereon at 7 per cent. from October 3, 1929; Simon Brothers, $497.42, with interest thereon at 7 per cent. from October 15, 1929; Higbee & Keyes, $27.38, with interest thereon at 7 per cent. from September 15, 1929. Interest on all liens should be calculated to the date of the original decree, to wit, April 24, 1930.

The judgment of the district court, awarding a lien to plaintiff Backers, is reversed, and the cause remanded to the trial court, with directions to modify its judgment, in other respects, so as to award liens to the respective parties in accordance with the findings in this opinion.

AFFIRMED IN PART, AND REVERSED IN PART.