**STEEL SUPPLIERS, INC., a Delaware corporation, Plaintiff,**

v.

**EHRET, INC., a Delaware corporation, PB & W RR Co. Penn Central (Amtrak) and International Underwriters, Inc., a Delaware corporation, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 8, 1984.
Decided: Nov. 26, 1984.

Samuel J. Frabizzio, of Agostini & Frabizzio, Wilmington, for plaintiff.

Timothy A. Casey, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant Amtrak.

TAYLOR, Judge.

The parties have agreed that the briefs heretofore submitted in connection with their earlier motions to strike and for default judgment contain their contentions on the issues discussed here and they rely on those contentions.

The issue is whether the waiver of mechanics lien provision contained in the contract between defendant Penn Central [Amtrak] and defendant Ehret, Inc. [Ehret] dated August 31, 1981 prevents plaintiff from pursuing this mechanics lien action against Amtrak. Plaintiff acted as a subcontractor to Ehret in supplying labor and materials which were required by the Amtrak-Ehret contract.

The contract between Amtrak and Ehret provided:

(a) The contractor hereby waives his right to assert Mechanics' or materialmen's liens pursuant to any applicable State or local statutes, or otherwise, against AMTRAK property or any other property in connection with work performed under this contract.

(b) The contractor shall insert or cause to be inserted, this clause including this subparagraph (b) in all subcontracts hereunder.

It has not been contended that plaintiff had actual notice of this provision and the discussion hereafter proceeds on the assumption that plaintiff was unaware that the provision was a part of the Amtrak-Ehret contract.

Amtrak relies on two documents which Ehret and plaintiff executed which it contends extends the waiver of mechanics lien to plaintiff. One document is a joint venture agreement dated October 5, 1981

which related to a portion of the work contemplated by the Amtrak-Ehret contract and which provided:

2.1 The Parties shall share, as hereinafter provided, the general obligations and responsibilities for the professional services to be performed under the Project Agreement.

\* \* \* \* \* \*

4.1 The Policy Board shall have full responsibility and authority for the performance of the Project Agreement, including, but not limited to, reassignment of work between the Parties, preparation of schedules of work, settlement of disputes with the Owner, and any other matters affecting the performance of services under this Joint Venture Agreement Actions and decisions of the Policy Board shall be by unanimous vote, or as otherwise set forth in Article 23, and shall be final, conclusive and binding upon the Parties.

Amtrak contends that by the quoted provisions of the joint agreement Article 2.1 plaintiff agreed to share the general obligations under the Amtrak agreement and that this included the waiver of lien provision of the Amtrak contract. This contention overlooks the precise language of Article 2.1. Article 2.1 provides for Ehret and plaintiff to share "the general obligations and responsibilities for the professional services to be performed under the Project Agreement." It will be assumed that the "Project Agreement" is the contract between Amtrak and Ehret. While the quoted language does refer to "general obligations and responsibilities ... under the Project Agreement" it is qualified by the language "for the professional services to be performed". I view the phrase "professional services" as referring to the work to be done under the contract. I do not view the sentence as imposing upon plaintiff non-work obligations which Ehret committed itself to. This conclusion is re-enforced by Article 2.4 which provides:

2.4 The relationship between the Parties shall be limited to the performance of professional services under the terms of this Joint Venture Agreement, which shall be construed and be deemed to be a Joint Venture for the performance of the Project Agreement only.

Here again, the relationship is confined to the "performance of professional services". Moreover, the document makes clear that each party is not a partner or agent of the other.

Article 4.1 quoted above provides for a Policy Board with full responsibility and authority for performance of the Project Agreement. While this Board is given broad powers, the Court has not been informed of any action taken by the Board to implement Ehret's obligation with respect to waiver of liens. Therefore, that provision standing alone does not aid Amtrak's position.

The other contract document entered into between Ehret and plaintiff which Amtrak relies on is a form contract dated October 21, 1981. This contract provides:

Subcontractor agrees to furnish all labor, materials, supplies, equipment and perform all the following part(s) necessary for the New Roofing & Siding Locomotive & Erecting Ship, Wilmington, Delaware, all in accordance with plans and specifications and contract documents as prepared by Amtrak and Ehret, Inc.

Based upon this language, Amtrak contends that plaintiff became bound by the waiver provision of the Amtrak-Ehret contract. This language merely binds plaintiff to perform work and supply materials in accordance with the contract documents. It does not bind plaintiff to meet Ehret's general obligations under the Amtrak-Ehret contract. Moreover, from an examination of the Ehret-plaintiff contract, the only specific reference to liens is in paragraph 16, which provides:

Subcontractor will forward to Ehret, Inc. partial Releases of Liens for payments received. Such Releases of Liens shall be mandatory and will be required before further payment can be made. Additionally, subcontractors and major vendors

of the subcontractor may be required to forward to Ehret, Inc. Releases of Liens to indicate payment to them for portions of work performed.

This provision contemplates partial releases of liens to be provided when payments are received and is inconsistent with the contention that plaintiff was to be bound by a general waiver of liens.

█ Based on the foregoing, I conclude that no provision of a contract entered into by plaintiff bound plaintiff to waive its right to mechanics lien or gave plaintiff actual notice of such waiver requirement.

Both parties have discussed *G.R. Sponaugle & Sons, Inc. v. McKnight Const. Co.*, Del.Super. 304 A.2d 339 (1973). That case involved a subcontract to which the plaintiff was a party which contained a waiver of mechanics lien—unlike the present case. This Court pointed out the requirement in 25 *Del.C.* § 2706 that mechanics lien be "expressly waived" and found that the work for which plaintiff sued was not covered by the contractual waiver language. The case is of assistance in that it holds that the waiver must be clearly expressed and should not be extended beyond its clear meaning and any doubt should be resolved against the waiver. Amtrak contends that the reference to the Amtrak-Ehret contract which appears in the Ehret-plaintiff contracts would be sufficient to bind plaintiff to the lien waiver. As noted above, it is assumed that plaintiff was unaware that the waiver provision was a part of that contract.

█ The right to mechanics lien exists by virtue of statute. 25 *Del.C.* Ch. 27. It gives a right to such lien to a workman or material supplier who supplies labor or materials in connection with a structure. 25 *Del.C.* § 2706 recognizes that the lien holder may waive his lien by expressly waiving the lien or by accepting notes or securities as payment. Cf. *Armstrong & Latta Co. v. Wilmington Sugar Refining Co.*, Del.Super., 120 A. 94 (1922); *G.R. Sponaugle & Sons, Inc. v. McKnight Const. Co.*, supra. This statutory requirement of ex-press waiver is in harmony with the general law which requires that the terms be clearly and unequivocally established. 53 *Am.Jur.2d* Mechanics Liens § 290, p. 826; Ibid. § 293, p. 827. Any ambiguity or doubt must be resolved against the waiver. Ibid.

█ It has been noted earlier that plaintiff was not a party to the contract which contained the waiver provision. Under Delaware law, a mechanics lien action is not based upon contract. *Armstrong v. Wilmington Sugar Refining Co.*, supra. Instead, it is in the nature of an in rem proceeding involving a statutory right created in favor of one who supplies labor or material for a structure located on land and attaches to the land affected thereby and structure. *Iannoti v. Kalmbacker*, Del.Super., 156 A. 366 (1931); *In re Republic Eng'r Co.*, Del.Super., 130 A. 498 (1925). The statutory right to the lien runs directly to each contractor, subcontractor, material supplier or workman who provided material or labor, but it is dependent upon the work having been authorized by the owner of the premises. *Coldiron v. Gaster*, Del.Super., 278 A.2d 328 (1971).

In determining whether a contract between a contractor and the owner which waives mechanics lien can bar lien by a subcontractor who is not a party to the contract, the cases fall into two categories—those which hold that a subcontractor derives his lien rights derivatively through the contractor and those which hold that the subcontractor has direct independent right to the lien. See Annotation in 75 *A.L.R.3d* 505–592. The cases which accept the derivative theory permit a properly worded contract between contractor and owner to bar the subcontractor, 75 *A.L.R.3d* 543–548; while those which hold that the subcontractor has a direct mechanics lien right independent of the contractor do not bar the subcontractor from obtaining a lien in spite of the owner's contract language. 75 *A.L.R.3d* 533–5.

The Delaware Supreme Court in *Weiner Co. v. Leedom Const. Co.*, Del.Supr., 97 A.2d 884 (1953) cautioned against readily accepting decisions from other states in the field of mechanics liens because of the disparity in the statutes.

Turning to the cases from other states relied upon by Amtrak, *Malin v. Muss*, Pa.Super., 234 Pa.Super. 259, 338 A.2d 676 (1975) involved a suit by owners against a subcontractor for breach of a waiver of lien provision contained in a contract to which the subcontractor was a party. *Malin* held that the subcontractor who breached his express waiver of lien was liable to the owners for their damages in opposing the mechanics lien proceeding which the subcontractor filed in breach of the waiver. *William F. Klingensmith, Inc. v. David H. Snell Landscape Contractor, Inc.*, Md. Super., 265 Md. 654, 291 A.2d 56 (1972) was a suit by a subcontractor against the general contractor for the balance of the subcontractor's price in which the Court held that the general provisions of the contract between the general contractor and the owner were not incorporated in the subcontract which only mentioned specific portions of that contract. *Harper v. Home Indemnity Company*, La.App., 140 So.2d 653 (1962) was a suit to enforce a subcontractor's bond and did not involve waiver of a mechanics lien. *Walker v. Collins Const. Co.*, Neb.Supr., 121 Neb. 157, 236 N.W. 334 (1931) recognized that the general contractor's contract with the owner could not waive the subcontractor's right to mechanics lien, but held that the subcontractor whose subcontract provided that it agreed to be bound by the terms and general conditions of the owner's contract and that "[n]othing in this article shall create any obligation on the part of the owner to pay or to see to the payment of any sums to any subcontractor" waived its right to mechanics lien. Here the subcontract did not contain such protection for the owner.

Amtrak contends that by including the waiver provision in its contract with Ehret, it has given itself the only protection which was possible in this situation. This argument overlooks various alternatives. (1) Amtrak could have required that all subcontractors' names be approved by Amtrak before subcontracting. In this way Amtrak could assure itself that the waiver provision was included in the subcontract or that the subcontractor was notified of the waiver requirement. (2) It could have provided waiver forms and required Ehret to have them executed by subcontractors and that they be filed with Amtrak before the subcontractor did any work. (3) It could have checked to see what subcontractors were working on the job and in this way been aware of the names of the subcontractors and could have then taken any of the above actions to secure waiver. (4) It could have required Ehret to certify names of subcontractors periodically. (5) It could have posted notice of the waiver of lien provision at the job site.

I conclude that under Delaware law a subcontractor's statutory right to mechanics lien rests upon the ability of the subcontractor to meet the statutory requirements and does not depend upon the ability of the general contractor to meet the statutory tests which apply to general contractors. Accordingly, the obligations which the general contractor assumes in derogation of the statutory rights do not bind the subcontractor unless the subcontractor assumes those obligations or limitations expressly or is put on notice expressly of such obligations or limitations.

The Court has determined above that plaintiff by the terms of the subcontract and the joint venture did not assume all of the obligations and limitations which the general contractor assumed. I conclude that based on the facts presented here plaintiff did not assume and is not bound by Ehret's obligations with respect to the waiver of mechanics lien by the subcontract or joint venture provisions.

Accordingly, Amtrak's motion for summary judgment is denied.

IT IS SO ORDERED.