SCOTT FERGUSON, APPELLANT AND CROSS-APPELLEE, V. UNION PACIFIC RAILROAD COMPANY, APPELLEE AND CROSS-APPELLANT.

601 N.W.2d 907

Filed November 5, 1999. No. S-98-652.

James C. Bocott, of Ruff Nisley & Lindemeier, for appellant.

Brenda J. Council for appellee.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Scott Ferguson brought this action to recover compensation allegedly due him from his employer, Union Pacific Railroad Company (Union Pacific), for periods when he was on active duty with the U.S. Army Reserve. The district court for Lincoln County determined, as a matter of law, that Ferguson's claim lacked merit and therefore entered summary judgment in favor of Union Pacific. Ferguson appealed, and we moved the appeal to our docket on our own motion. We find no error and therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Ferguson has been an employee of Union Pacific and a member of the Army Reserve since November 1993. He served on active duty with the Army Reserve for at least 15 days during each of the years 1994 through 1996. Ferguson submitted claims to Union Pacific for compensation allegedly due him while he was on active military duty, but Union Pacific denied his claims. Thereafter, Ferguson invoked the assistance of the United Transportation Union, his collective bargaining agent, which submitted several formal claims on his behalf, each indicating that Ferguson's claims for lost wages were made pursuant to Neb. Rev. Stat. § 55-160 and §§ 55-163 to 55-165 (Reissue 1998).

Sharon F. Boone, manager of labor relations for Union Pacific, denied each of these claims, stating in correspondence

that "there is no basis in any rule and/or agreement to support the payment as claimed. You are citing Nebraska Statues [sic] other than Collective Bargaining Agreements in support of this claim." Boone's correspondence further stated:

When employees take a leave of absence from the Company for any reason (military, personal, sick, etc.) they relieve themselves from the covenants and benefits of the Collective Bargaining Agreement and are not covered under such agreements. Therefore, for the reasons stated above, Claimant would not be entitled to any additional compensation as claimed.

On December 19, 1996, Ferguson filed suit against Union Pacific in the district court for Lincoln County, Nebraska, claiming lost wages for work missed while in the active service of the U.S. Army Reserve. Union Pacific removed the case to the U.S. District Court for the District of Nebraska, and Ferguson moved for remand, arguing that the federal court lacked subject matter jurisdiction. The federal court granted Ferguson's motion on July 16, 1997, and remanded the cause to the state district court.

Union Pacific then filed its answer, asserting as affirmative defenses that the court lacked subject matter jurisdiction over the action because Ferguson's claim was preempted by the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq. (1994 & Supp. III 1997), and that Ferguson's petition failed to state a claim upon which relief could be granted. Thereafter, Union Pacific filed a motion for summary judgment, arguing that Ferguson's claim was a minor dispute subject to the mandatory arbitration procedures of the RLA and, alternatively, that Ferguson's petition failed to state a cause of action. Ferguson also filed a motion for summary judgment, arguing that no genuine issue of material fact existed in the case and that he was entitled to judgment as a matter of law.

The district court granted Union Pacific's motion for summary judgment based upon its determination that Ferguson was not entitled to compensation under § 55-160 or upon any other basis. The court did not specifically rule on Union Pacific's contention that it lacked subject matter jurisdiction over Ferguson's claim because of an RLA preemption.

## ASSIGNMENTS OF ERROR

Ferguson contends on appeal, restated and summarized, that the district court erred in determining that § 55-160, regarding military leaves of absence from employment without loss of pay, applies only to state or public employees, not private employees, and thus erred in granting summary judgment in favor of Union Pacific.

On cross-appeal, Union Pacific contends that the district court erred in (1) declining to squarely address Union Pacific's contention that the court lacked subject matter jurisdiction over Ferguson's claim for wages while attending training with the U.S. Army Reserve and (2) failing to dismiss Ferguson's petition for lack of subject matter jurisdiction on the ground that the claim is subject to the mandatory and exclusive dispute resolution procedures under the RLA.

## ANALYSIS

*Subject Matter Jurisdiction.*

We initially address Union Pacific's argument, set forth in its cross-appeal, that the district court lacked jurisdiction over the subject matter of Ferguson's claim because it was preempted by the RLA. We interpret the fact that the district court did not specifically rule on the preemption issue, but, rather, determined the action on its merits, as a finding that Ferguson's claim was not preempted and the court therefore had subject matter jurisdiction. See *State v. Ward,* 257 Neb. 377, 597 N.W.2d 614 (1999).

Subject matter jurisdiction is a court's power to hear a case. *Schweitzer v. American Nat. Red Cross,* 256 Neb. 350, 591 N.W.2d 524 (1999); *Kuhlmann v. City of Omaha,* 251 Neb. 176, 556 N.W.2d 15 (1996). When a lower court lacks the authority to exercise its subject matter jurisdiction so as to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. *In re Adoption of Kassandra B. & Nicholas B.,* 248 Neb. 912, 540 N.W.2d 554 (1995). However, even though an extrajudicial act of a lower court cannot vest an appellate court with jurisdiction to review the merits of an appeal, the appellate court has jurisdiction and, moreover, the duty to determine whether the lower court had the

power, that is, the subject matter jurisdiction, to enter the judgment or other final order sought to be reviewed. *In re Estate of Andersen*, 253 Neb. 748, 572 N.W.2d 93 (1998). When a jurisdictional question does not involve a factual dispute, its determination is a question of law which requires an appellate court to reach a conclusion independent from that of the trial court. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999).

 Union Pacific argues that the district court lacked subject matter jurisdiction because Ferguson's claim is a "minor dispute" within the meaning of the RLA and is thus subject to the exclusive, nonjudicial resolution procedures set forth therein, thereby preempting any cause of action under state law. "Whether federal law pre-empts a state law establishing a cause of action is a question of congressional intent." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994). The RLA is a federal law enacted "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes" in the transportation industry. *Id.* See, also, *Atchison T. & S. F. R. Co. v. Buell*, 480 U.S. 557, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987). The RLA requires that "minor disputes" between railroads and their employees be resolved by a nonjudicial arbitral mechanism established by the RLA. *Hawaiian Airlines, Inc. v. Norris, supra*; 45 U.S.C. § 153. In this context, "minor disputes" include those " 'gro[wing] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions' " and involving " 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.' " *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. at 252-53, quoting 45 U.S.C. § 151a(5) and *Trainmen v. Chicago R. & I. R. Co.*, 353 U.S. 30, 77 S. Ct. 635, 1 L. Ed. 2d 622 (1957). A claim founded on state law is preempted by the RLA "where the resolution of a state-law claim depends on an interpretation of the [collective bargaining agreement]." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. at 261. However, the existence of a potential remedy under a collective bargaining agreement does not deprive an employee subject to the RLA of "independent remedies available under state law." *Id.* Indeed,

" 'even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself,' " there is no federal preemption. 512 U.S. at 262, quoting with approval *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988).

The preemption argument which Union Pacific advances here was specifically rejected by the U.S. District Court for the District of Nebraska when it remanded the cause to state court following removal by Union Pacific. U.S. Magistrate Judge Thomas D. Thalken reasoned:

> An examination of the plaintiff's complaint does not lead the court to believe that the resolution of this dispute will depend upon an interpretation of a collective bargaining agreement or any other aspect of federal law. Rather, although involving a railroad company as the defendant, this case appears to relate solely to an interpretation of Neb. Rev. Stat. § 55-160 (Reissue 1993). This statute creates rights that are independent of the collective bargaining agreement and is therefore not preempted by the RLA.

Our analysis leads to the same conclusion. Although ·Ferguson's petition does not make specific reference to § 55-160, it is clear from the record that entitlement under this state statute was the only specific substantive basis for Ferguson's claim which was argued to or considered by the district court. Additionally, the formal claims submitted by the United Transportation Union on Ferguson's behalf, as well as Union Pacific's letters denying them, acknowledge § 55-160 as the source of his alleged entitlement.

For purposes of determining whether the RLA preempts a state law claim, a court must assume without deciding that a state remedy exists. See, *Poole v. Burlington Northern R. Co.*, 987 F. Supp. 753 (D. Neb. 1997); *Trexler v. Norfolk Southern Ry. Co.*, 957 F. Supp. 772 (M.D.N.C. 1997). A claim which turns on " 'purely factual questions' " about an employee's conduct or an employer's conduct and motives is independent of a collective bargaining agreement. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261, 114 S. Ct. 2239,

129 L. Ed. 2d 203 (1994). Resolution of the merits of this case would require a court to determine: (1) whether Ferguson is employed by an entity to which the statute applies, (2) whether Ferguson is a member of the military, (3) whether Ferguson took a leave of absence from his employment under the orders or authorization of competent authority in the active service of the state or of the United States, and (4) whether such leave of absence from employment was without pay. See, § 55-160; *Poole v. Burlington Northern R. Co., supra.* Clearly, each of the above inquiries are purely factual questions, and we therefore conclude that Ferguson's state law claim is independent of the collective bargaining agreement. Moreover, we note that Union Pacific's manager of labor relations characterized Ferguson's claim for compensation as one arising under Nebraska statutes and therefore not subject to the provisions of any collective bargaining agreement. Thus, assuming for purposes of the preemption analysis only that Ferguson has a remedy under § 55-160, it is clear that adjudication of such a claim would not require interpretation of the collective bargaining agreement. Accordingly, we hold that Ferguson's claim is not preempted by the RLA and that the district court had subject matter jurisdiction to reach the merits of the claim. Union Pacific's cross-appeal is, thus, without merit.

*Entitlement to Compensation.*

In reviewing the district court's decision granting Union Pacific's motion for summary judgment, we are guided by the principle that summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *NECO, Inc. v. Larry Price & Assocs.*, 257 Neb. 323, 597 N.W.2d 602 (1999); *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999). In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable infer-

ences deducible from the evidence. *NECO, Inc. v. Larry Price & Assocs., supra; Fackler v. Genetzky, supra.*

■ Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Shivvers v. American Family Ins. Co.*, 256 Neb. 159, 589 N.W.2d 129 (1999).

Section 55-160 provides:

> All employees, including elected officials of the State of Nebraska, or any political subdivision thereof, who shall be members of the National Guard, Army Reserve, Naval Reserve, Marine Corps Reserve, Air Force Reserve, and Coast Guard Reserve, shall be entitled to leave of absence from their respective duties, without loss of pay, on all days during which they are employed with or without pay under the orders or authorization of competent authority in the active service of the state or of the United States, for not to exceed fifteen workdays in any one calendar year. Such leave of absence shall be in addition to the regular annual leave of the persons named herein. When the Governor of this state shall declare that a state of emergency exists, and any of the persons named in this section are ordered to active service of the state, an additional leave of absence will be granted until such member is released from active service by competent authority. During the additional leave of absence because of the call of the Governor, any official or employee subject to the provisions of this section shall receive such portion of his salary or compensation as will equal the loss he may suffer while in active service of the state. Governmental officers serving a term of office shall receive their compensation as provided by law.

We have considered this statute on one prior occasion in *King v. School Dist. of Omaha*, 197 Neb. 303, 248 N.W.2d 752 (1976).

While we stated in that case that § 55-160 applied to all employees of the state and any political subdivisions thereof, we were not presented with the question before us here, namely, whether the statute applies to nongovernmental employers and employees.

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999); *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Hagelstein v. Swift-Eckrich, supra*; *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999). In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999); *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998).

Ferguson focuses on the first sentence of § 55-160, which provides that "[a]ll employees, including elected officials of the State of Nebraska, or any political subdivision thereof, who shall be members of the . . . Army Reserve . . . shall be entitled to leave of absence from their respective duties, without loss of pay" during periods of active military duty not to exceed 15 days per calendar year. He argues that because there is no comma after the word "officials," the statute plainly applies to all employees of any employer and is not limited to employees of the state or its political subdivisions. However, the manner in which a statute is punctuated does not require that we disregard other well-settled standards of statutory construction in determining its meaning. For example, in *State v. Robbins*, 253 Neb. 146, 149, 570 N.W.2d 185, 188 (1997), we declined to attribute a meaning to a statute derived from the placement of a comma where doing so would have rendered other provisions of the

statute "meaningless surplusage." Ferguson's contention that the first sentence of § 55-160 extends its applicability to all employees of any public or private employer is inconsistent with subsequent language which indicates a narrower scope. The leave of absence provided for by § 55-160 is to be "in addition to the regular annual leave *of the persons named herein.*" (Emphasis supplied.) Additional leave of absence is required when the Governor declares a state of emergency "and *any of the persons named in this section* are ordered to active service of the state." (Emphasis supplied.) *Id.* Further, the statute provides that during such periods, "any official or *employee subject to the provisions of this section* shall receive such portion of his salary or compensation as will equal the loss he may suffer while in active service of the state." (Emphasis supplied.) *Id.* Were § 55-160 universally applicable to all employees of any employer, this language limiting its application to persons "named" or "subject to the provisions" of the statute would be unnecessary and meaningless.

■■■ The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *In re Estate of Myers*, 256 Neb. 817, 594 N.W.2d 563 (1999); *Central States Found. v. Balka, supra.* Section 55-160 is included in Nebraska's Military Code, which also includes Neb. Rev. Stat. § 55-162 (Reissue 1998), which provides:

> *Except for persons subject to section 55-160* members of the reserve components of the armed forces of the United States or of the military forces of the State of Nebraska, who, having been involuntarily ordered into the active military service of the United States, or of this state, leave a position in the employ of *any employer*, and who make application within thirty days after they are relieved from such training or duty, shall be entitled to be restored to their previous or a similar position with the same status and pay.
>
> The period of absence for military training or duty with the armed forces of the United States or active service of

the state shall be construed as an absence with leave and seniority shall continue to accrue during such period of absence. In the discretion of the employer, such leave may be with or without pay.

(Emphasis supplied.)

■ The provisions of § 55-162 plainly apply to persons "in the employ of any employer" *except* those falling within the scope of § 55-160. Reading § 55-160 in pari materia with § 55-162, we conclude that the Legislature has established a general rule that employers may decide whether or not to compensate employees for periods when they are on leave due to military obligations, with an exception that employees and officials of the state or any of its political subdivisions are entitled to be compensated as set forth in § 55-160. We hold that § 55-160 is inapplicable to private sector employment relationships and that Ferguson's claim against Union Pacific therefore must fail as a matter of law.

## CONCLUSION

The district court had subject matter jurisdiction over Ferguson's claim that Union Pacific was obligated by § 55-160 to compensate him for periods when he was in its employ and on active military duty. For the reasons stated herein, we agree with the court's determination that no such obligation arose under the statute. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

CONNOLLY, J., not participating.