LINCOLN LUMBER COMPANY, APPELLEE, V.
LEE W. LANCASTER AND ANGELA L. LANCASTER,
HUSBAND AND WIFE, AND NATIONSBANC MORTGAGE CORPORATION,
APPELLANTS, AND KASER PAINTING, INC., APPELLEE.

618 N.W.2d 676

Filed October 27, 2000. No. S-99-1048.

R. Kent Radke for appellants.

Douglas D. DeLair, of DeLair and DeLair Law Office, for appellee Lincoln Lumber Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This is an appeal from a foreclosure action on construction liens filed under the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 through 52-159 (Reissue 1998). Appellees, Lincoln Lumber Company and Kaser Painting, Inc. (Kaser), petitioned the district court for foreclosure of their construction liens filed on property purchased by appellants Lee W. Lancaster and Angela L. Lancaster.

Union Bank and Trust Company (Union Bank) provided the funds for the Lancasters' permanent financing, which were secured by a deed of trust that Union Bank concurrently assigned to appellant NationsBanc Mortgage Corporation (NationsBanc).

The district court entered judgment for both Kaser and Lincoln Lumber and determined that NationsBanc's security interest had priority over Kaser and Lincoln Lumber only to the extent the funds had been used to pay for the disbursements made under the prior construction security interest. NationsBanc and the Lancasters appeal from that order, which was made final by the court on July 30, 1999.

Under our de novo review, we determine that the district court erred by not giving effect to a stipulation between Lincoln Lumber and NationsBanc that NationsBanc's security interest had priority over Lincoln Lumber's construction lien. Therefore, NationsBanc is entitled to have full priority for its security interest over the construction lien of Lincoln Lumber, and we modify the judgment accordingly.

## BACKGROUND

On October 21, 1994, the Lancasters entered into a purchase agreement with Daugherty Construction, Inc. (Daugherty), for the construction of a new home at 801 Mary Court in Lincoln, Nebraska. The contract price was for $92,479. On April 7, 1995, Daugherty took out a blanket construction loan for several properties from Union Bank. Union Bank filed its security interest for the loan with the register of deeds on the same day, and the amount of the security interest for 801 Mary Court was $74,800. State Title Services, Inc. (State Title), served as Union Bank's disbursement agent for the construction improvement on the property.

Daugherty was the legal titleholder during the entire construction period until the closing with the Lancasters, and the company filed a notice of commencement on April 6, 1995, listing Daugherty as the contracting owner and titleholder. Around September 21, 1995, Daugherty filed for bankruptcy. On September 20, 1995, Kaser filed a construction lien against the property for $2,032, and on September 21, Lincoln Lumber filed a construction lien on the property for $21,498.

For a time, work on the property came to a stop after the filing of the liens. The house was 75 percent complete at the time of the filings, around the end of September, and the record shows that $66,094.69 of Union's security interest had been disbursed as of August 4, 1995.

Approximately 3 months before the Lancasters' closing on February 22, 1996, State Title authorized subcontractors to come in and complete the home for the Lancasters.

At closing, the Lancasters paid $17,888.52, in addition to $1,934 in overages the Lancasters paid directly to subcontractors, for a total of $19,822.52. The Lancasters also obtained financing from Union Bank for $75,500, which was secured by a deed of trust and assigned to NationsBanc on the same day. Because State Title had disbursed $66,094.69 on the construction loan before the liens were filed, $9,405.31 of the permanent financing funds were paid over and above the $66,094.69.

At trial, Lincoln Lumber stipulated that NationsBanc's security interest had priority over its construction lien. Kaser filed an answer and cross-petition to Lincoln Lumber's petition in district court, asking that its lien be given first priority, but did not appear at trial and was not party to this stipulation.

The Lancasters argued at trial that their lien liability was limited by their status as "protected party contracting owners." The district court found that the Lancasters were protected parties, but not contracting owners, and that NationsBanc's lien was superior to the construction liens only to the extent that its security interest had been used to pay for the actual disbursements made under the original construction loan before the liens were filed. The district court therefore entered judgment for both Lincoln Lumber and Kaser for the full amount of their liens plus interest and ordered the property sold if the judgments were not paid. The Lancasters and NationsBanc timely appeal from that order.

## ASSIGNMENTS OF ERROR

The Lancasters and NationsBanc assign that the district court erred in finding that the Lancasters were not protected party contracting owners and thereby not entitled to the protections of § 52-136(5). NationsBanc assigns that the district court erred in

limiting its security interest to the amount of disbursements made under the original construction loan.

## STANDARD OF REVIEW

An action to foreclose a construction lien is one grounded in equity. In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998); *Midlands Rental & Mach. v. Christensen Ltd.*, 252 Neb. 806, 566 N.W.2d 115 (1997).

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Philpot v. Aguglia*, 259 Neb. 573, 611 N.W.2d 93 (2000); *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

## ANALYSIS

The Lancasters argue that they have no lien liability because they are protected party contracting owners and the funds they paid at closing were used to satisfy their obligation under their purchase agreement with Daugherty.

NationsBanc argues that the full amount of its deed of trust is superior to Lincoln Lumber's lien because the funds for its subsequent security interest were used to pay off the construction security interest, which had priority over the construction liens.

Lincoln Lumber, a supplier of building materials, counters that the Lancasters do not have protected party contracting owner status and that its construction lien is secondary to NationsBanc's security interest only to the extent the

NationsBanc funds were used to pay for disbursements made under the prior construction security interest.

## PROTECTED PARTY CONTRACTING OWNER

The Lancasters contend that their lien liability under the Nebraska Construction Lien Act, §§ 52-125 through 52-159, is limited to the amount of their purchase agreement with Daugherty, minus payments made thereon. Specifically, they cite § 52-136(5), which states: "A protected party contracting owner's lien liability under a particular prime contract is the prime contract price less payments properly made thereon." Accordingly, if the Lancasters are protected party contracting owners, their purchase agreement with Daugherty would be the prime contract, and their satisfaction of that agreement at closing would constitute the limit of their liability.

■ The threshold issue of the Lancasters' defense is whether they satisfy the statutory definition of a protected party contracting owner. "Protected party" and "contracting owner" are defined separately under the act, and a party must satisfy the requirements of each protected status in order to assert this defense. See *Midlands Rental & Mach. v. Christensen Ltd., supra.*

Under § 52-129(1)(a), a protected party is "[a]n individual who contracts to give a real estate security interest in, or to buy or to have improved, residential real estate all or a part of which he or she occupies or intends to occupy as a residence." The Lancasters satisfied the requirements of a protected party by contracting to have improvements made to property they intended to purchase as their own residence.

Protected parties under the act are allowed to take free of "all construction liens that are not of record at the time his or her title document is recorded." § 52-139(5). The construction liens of Lincoln Lumber and Kaser, however, were both recorded before the filing of the Lancasters' title document, so protected party status does not avoid liability for the Lancasters.

■ Next, we must determine whether the Lancasters are contracting owners. Section 52-127(3) defines contracting owner as "a person who owns real estate and who, personally or through an agent, enters into a contract, express or implied, for the improvement of the real estate."

The Lancasters argue that the purchase agreement they signed to buy improved real estate from Daugherty "carried a sufficient ownership interest in the subject property to qualify them as contracting owners." Brief for appellants at 13. In support of this contention, the Lancasters cite *May Plumbing Co. v. Shaver*, 182 Neb. 251, 256, 153 N.W.2d 911, 915 (1967): " '[O]wner' as used in our mechanic's lien law is not limited in its meaning to an owner of the fee, but means the owner of any interest in the lands and includes every character of title, whether legal or equitable, fee simple, or leasehold." *May Plumbing Co.*, however, does not support the Lancasters' position that they are contracting owners.

*May Plumbing Co.* stands for the proposition that a husband or wife can be an agent of their spouse for purposes of having lien liability imposed. While the definition of "owner" in *May Plumbing Co.* was expanded, it was done so in order to ensure that the mechanic's lien would be valid, not to limit liability for the purchaser. See, also, *Bohn Mfg. Co. v. Kountze*, 30 Neb. 719, 725-26, 46 N.W. 1123, 1125 (1890) ("[w]here a vendee, owning the equitable title, contracts for the erection of a building upon the express authority of the owner of the legal title, it is but just that the lien of the mechanic should attach to the interest of both vendor and vendee in the premises, and be paramount to the lien of the vendor").

The expansion of the term "owner" in Nebraska cases has been in keeping with this court's consistent holdings that " '[t]he object of the mechanic's lien being to secure the claims of those who have contributed to the erection of a building, it should receive the most liberal construction to give full effect to its provisions.' " *Midlands Rental & Mach. v. Christensen Ltd.*, 252 Neb. 806, 810, 566 N.W.2d 115, 118 (1997), quoting *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995). Here, the Lancasters ask us to expand the definition of owner in order that they may avoid their lien liability. We decline to do so.

This court recently addressed the issue of defining a contracting owner in *Midlands Rental & Mach. v. Christensen Ltd., supra.* The record owner of the property, Christensen Ltd., contracted to give a builder the right to construct homes for indi-

viduals who contracted with the builder to purchase the homes. Christensen did not transfer title for the lots to the builder until the construction was completed. The builder would then transfer title to the purchaser. One of the builder's contractors failed to pay a supplier, which, in turn, filed a construction lien against Christensen, as the property owner.

Christensen contended that the amount of the subcontractor's lien should be determined under § 52-136(2). Like § 52-136(5) at issue in this case, § 52-136(2) gives special protection to protected party contracting owners. Christensen argued that because the houses were subject to purchase agreements with third-party buyers who intended to occupy the houses as their residences, the buyers were protected party contracting owners and, thus, § 52-136(2) was invoked.

We noted that the parties had stipulated that Christensen was the record titleholder of the properties and stated, "There can be little doubt, therefore, that Christensen is a contracting owner . . . . Moreover, despite the fact that the properties and houses are subject to purchase agreements, the interest in the real estate a vendor retains is subject to a construction lien." *Midlands Rental & Mach. v. Christensen Ltd.*, 252 Neb. at 814, 566 N.W.2d at 121, citing *Bohn Mfg. Co. v. Kountze, supra.*

■ Likewise, in this case, Daugherty was the vendor and record titleholder of the property at the time the liens were filed. Daugherty's ownership interest was sufficient to charge the property with a construction lien, and the Lancasters were put on notice of the construction liens before closing with Daugherty. We conclude that the Lancasters' interest in the property as potential purchasers does not make them contracting owners. Thus, the Lancasters do not qualify as protected party contracting owners and cannot limit their liability for the construction liens of Lincoln Lumber and Kaser under § 52-136(5).

### PRIORITY BETWEEN SECURITY INTERESTS AND CONSTRUCTION LIENS

NationsBanc contends that the full amount of its deed of trust has priority over Lincoln Lumber's construction lien because the funds for its subsequent security interest were used to pay off

the construction loan, which had priority over the construction liens.

■ Section 52-139 provides the framework for determining priorities between construction liens as against other claims. In general, construction liens have priority over adverse claims of which the contractor is unaware. See § 52-139(1). However, subsection (4) provides that "[t]o the extent that a subsequent security interest is given to secure funds used to pay a debt secured by a security interest having priority over a construction lien under this section, the subsequent security interest is also prior to the construction lien."

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Philpot v. Aguglia*, 259 Neb. 573, 611 N.W.2d 93 (2000); *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

NationsBanc argues that subsection (4) provides that its subsequent security interest has priority over the construction liens for the full amount required to pay off a prior construction loan. However, if the Legislature had intended that a subsequent security interest would have priority for the full payoff amount of a prior construction loan, it would not have limited that priority *to the extent* of the prior construction security interest's priority over any construction lien.

This reading is consistent with the comments to the Uniform Simplification of Land Transfers Act, upon which the Nebraska Construction Lien Act is based. See *Action Heating & Air Cond. v. Petersen*, 229 Neb. 796, 429 N.W.2d 1 (1988). "This statutory subrogation of the latter to the prior interest recognizes that the lien claimant is not prejudiced by having one creditor substituted for another so long as the total amount having priority over his interest is not increased." Unif. Simplification of Land Transfers Act § 5-209, comment 1, 14 U.L.A. 339 (1990).

Union Bank, pursuant to its security interest in the construction loan to Daugherty, could have asserted a first priority lien against the property to the extent it had made disbursements. The last disbursement record before the filing of the construction liens showed that $66,094.69 had been disbursed on

Daugherty's construction loan. Therefore, no other contractors or suppliers would have been prejudiced by giving NationsBanc's subsequent deed of trust priority for that same amount. However, to give NationsBanc priority for the $9,405.34 paid over and above the construction loan's priority does prejudice the interests of those filing construction liens ahead of the deed of trust.

Therefore, the district court's determination that NationsBanc's deed of trust for $75,500 had priority over the construction liens only to the extent of the $66,094.69 disbursements was correct with respect to the interests of Kaser. The district court erred, however, in coming to this same conclusion as to the interests of Lincoln Lumber.

Both Kaser and Lincoln Lumber were entitled to the unpaid part of their contract price under § 52-136(1). Because Daugherty's notice of commencement was in effect at the time they filed their liens, both liens attached on the date the notice of commencement was filed pursuant to § 52-137(2), and the claimants therefore had equal priority under § 52-138(1).

At trial, however, Lincoln Lumber stipulated on the record that NationsBanc's security interest had priority over its construction lien. The general rule is that parties are bound by stipulations voluntarily made. *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997). In Nebraska, parties are free to make stipulations that govern their rights, and such stipulations will be respected and enforced by courts so long as the agreement is not contrary to public policy or good morals. *Mischke v. Mischke, supra* (concluding estate was bound by stipulation made in earlier trial as to value of rents and profits notwithstanding intervening Nebraska Supreme Court decision determining that estate was entitled to profits made by appellees on constructive trust principles); *In re Estate of Mithofer*, 243 Neb. 722, 502 N.W.2d 454 (1993) (affirming district court's rejection of party's request to withdraw from stipulation made on record that fixed parties' interests in estate property where court record satisfied statutory requirement that such agreements be in writing); *Kuhlman v. Platte Valley Irr. Dist.*, 166 Neb. 493, 89 N.W.2d 768 (1958) (concluding it was error for district court to dismiss cause of action for damages for insufficient evidence when parties had

stipulated on record, with court approval, that issue of damages would be continued until later date); *St. Joseph Dev. Corp. v. Sequenzia*, 7 Neb. App. 759, 766, 585 N.W.2d 511, 516 (1998) (concluding that judgment debtor had "stipulated away" her right to assert trial court lacked personal jurisdiction due to insufficient service—required under Uniform Enforcement of Foreign Judgments Act—by agreeing at trial that filing of foreign judgment created judgment lien on property in question), *overruled on other grounds, Breeden v. Nebraska Methodist Hosp.*, 257 Neb. 371, 598 N.W.2d 441 (1999); *In re Estate of Watson*, 5 Neb. App. 184, 557 N.W.2d 38 (1996) (giving effect to stipulation that estate would pay for legal fees up to certain date despite clear evidence of attorney's conflict of interest in case that would otherwise prohibit payment of fees).

Because the stipulation was binding on Lincoln Lumber, it was error for the district court to determine that NationsBanc's security interest had priority over Lincoln Lumber's construction lien only to the extent disbursements had been made on the construction loan. We conclude that pursuant to the parties' stipulation, NationsBanc's deed of trust for $75,500 has full priority over Lincoln Lumber's construction lien.

 The stipulation, however, is not binding on the rights of Kaser, since Kaser was not a party to a proceeding and did not assent to the stipulation. See, *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996) (concluding collateral estoppel could not be asserted against insurance company that was not party to consent judgment); *Bryant Heating v. United States Nat. Bank*, 216 Neb. 107, 114, 342 N.W.2d 191, 196 (1983) (dismissing appellee's argument that it was prejudiced by stipulation between other parties when it "was not a party to the stipulation in question and therefore cannot be bound by it"); *Walker v. Collins Construction Co.*, 121 Neb. 157, 236 N.W. 334 (1931) (holding subcontractors are not deprived of right to lien by contract stipulation between general contractor and owner unless they assent to its terms).

Because the stipulation was not binding on Kaser, NationsBanc's subsequent deed of trust has priority over Kaser's lien for only $66,094.69, which was the extent that disbursements were made under the original construction loan.

## CONCLUSION

We affirm the district court's determination that Kaser and Lincoln Lumber had valid liens that may be enforced against the Lancasters. The district court correctly found that NationsBanc's deed of trust has priority over Kaser for only $66,094.69, the extent the funds were used to pay for disbursements made under the prior construction security interest. Upon our de novo review, however, we conclude that the district court erred in not upholding the stipulation between NationsBanc and Lincoln Lumber at trial. Therefore, we modify the judgment to reflect that NationsBanc's deed of trust has full priority over Lincoln Lumber's construction lien.

AFFIRMED AS MODIFIED.