RIESCHICK DRILLING COMPANY, A PARTNERSHIP,
APPELLANT AND CROSS-APPELLEE, V.
AMERICAN CASUALTY COMPANY, A PENNSYLVANIA
CORPORATION, ET AL., APPELLEES AND
CROSS-APPELLANTS.

303 N.W.2d 264

Filed February 27, 1981.   No. 43013.

Richard L. Halbert for appellant.

Lyle E. Strom of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler for appellee Rogers.

Robert J. Huck of Croker & Huck for appellees except Rogers.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and COLWELL, District Judge.

BRODKEY, J.

Plaintiff, Rieschick Drilling Company (Rieschick), which was engaged in the business of drilling wells, appeals to this court from a judgment entered in the District Court of Otoe County in an action brought by Rieschick against the defendants, Charles J. Rogers Construction Company (Rogers), a subcontractor, and against Darin & Armstrong, Inc., the general contractor, and also against American Casualty Company and National Fire Insurance Company, the bonding companies for the general contractor. In its action in District Court, Rieschick sought to recover the reasonable value of well-drilling labor, materials, and equipment furnished pursuant to alleged oral requests by Rogers, the subcontractor; and also sought in the same action to recover against the bonding companies under Neb. Rev. Stat. § 52-118.01 (Reissue 1978), and to recover an attorney fee under Neb. Rev. Stat. § 44-359 (Reissue 1978). Defendant Darin & Armstrong, Inc., the general contractor, was dismissed from the action prior to trial, and no error is assigned in this appeal with regard to such dismissal.

Trial was had to the court, sitting without a jury, in the District Court of Otoe County, following which the court entered judgment for Rieschick in the amount of $13,547.19 and court costs. The trial court did not award Rieschick attorney fees in this action. The principal issues raised in this appeal are whether the trial court erred in its assessment of its award to Rieschick and whether it erred in failing to award Rieschick attorney fees pursuant to the aforementioned statute, § 44-359. Rogers has cross-appealed, alleging that the work and materials performed and supplied by Rieschick were within the scope of its original contract with Rieschick; and Rogers prayed for the dismissal of Rieschick's petition and also for judgment on its counterclaim against Rieschick for the amount of $4,831.78 and costs, in which counterclaim it sought to recover the value of labor performed by Rogers' employees in assisting Rieschick in performing its contract.

The facts in this case reveal that Rogers, a Michigan corporation, was generally engaged in underground excavation and foundation construction, and entered into a subcontract in the spring of 1976 to do the excavation and drainage work required in connection with the construction of a coal power plant near Nebraska City. The contract between Rogers and the general contractor, Darin & Armstrong, Inc., required that a 70- x 90-foot area be excavated and dewatered so that the power plant thrust block, a massive concrete foundation, could be constructed. The plans on the project called for the thrust block to be installed at an elevation of 893.5 feet above sea level. The location of the site where the excavation was to take place had a ground surface elevation of approximately 916 feet and a water table average of 906 feet. The water table average would fluctuate because of the project's proximity to the Missouri River and also because of seasonal precipitation. The project required that the excavation site be dewatered to a level

of 890 feet to provide that the bottom of the thrust block area would be dry for the pouring and curing of the cement foundation. As Rogers did not generally engage in dewatering excavation sites, the company "put out a call" for dewatering bids in March of 1976.

In response to this call, Rogers received three bids. The first was from Layne-Western Company in the sum of $14,160 and provided for the drilling of two wells and the installation of two 40-horsepower well pumps which would dewater the excavation area to the 890-foot level. The second bid, from Stang Hydronics, Inc., was in the sum of $12,000 for the installation of wells, plus the rental sum of $1,900 per month to operate the water pumps and discharge pipes. This bid also recited that Stang Hydronics would bring the water table down to the 890-foot level. After receipt of these bids, Rogers contacted Rieschick Drilling, a partnership in Falls City, Nebraska, which is operated by Roy Rieschick and his mother, Carol Rieschick. It appears that this contact was made by Rogers because Rieschick drilled an average of 50 wells a year and was familiar with the water table in the Nebraska City area. Roy Rieschick examined the excavation site and submitted a bid of $12,240 on April 6, 1976. The Rieschick bid called for the installation of four wells and four 6-inch submersible pumps, and included the statement: "This bid is for completed well & pump installed & completely owned by C. J. Rogers. Any overtime or extra cost is billed to C. J. Rogers."

Rogers accepted this bid by issuing a purchase order the same day, and installation of the well and pump system began on April 10, 1976. This installation, however, proved inadequate and the pumps failed to lower the water table to the required 890-foot level. Rieschick then advised Rogers that it would use two 8-inch well pumps to complete the dewatering project. To avoid further delay in the construction of the power plant, Rogers informed Rieschick to proceed, relying upon Rieschick's expertise. The 8-inch pumps were

installed in May of 1976, but, notwithstanding, were not adequate to lower the water table to the required level. It finally appears that in June of 1976 Rieschick rented a well point water pump system and installed it at the excavation site. This system, together with the other pumps, was able to keep the water level down so that the installation of the thrust block could proceed. The record indicates that Rieschick presented Rogers with statements totaling $28,854.42 for labor and materials furnished in connection with the installation of the two 8-inch water pump systems. This amount did not include the rental of the well point system, which was subsequently paid to Rieschick. When Rieschick threatened to remove the well point pump system unless Rogers' supervisor signed the invoices, indicating approval, the supervisor signed the invoices, but with the notation that, while the work had been done, there was no agreement about payment or the prices charged for the labor and materials provided. Upon completion of the project, it appears that Rogers attempted to return the 8-inch pumps to Rieschick, which refused to accept them, contending that the pumps became the property of Rogers. These pumps were subsequently removed by Rogers when it completed its work in January of 1977, and have been stored at Rogers' offices in Michigan since that time as the property of Rieschick.

This matter came to trial before the District Court of Otoe County on April 25, 1979, and May 16, 1979, a jury having been waived by all of the parties. The court found that the original contract of April 6, 1976, required Rieschick to design and install a dewatering system which would lower the water table at the thrust block site to 890 feet. The court further found that Rieschick's installation was unsuccessful and inadequate in lowering the water table to the contracted level. In its memorandum opinion, filed August 8, 1979, the trial court stated:

"An issue has arisen as to whether the plaintiff was

bound by his original bid to lower the water table to the 890 foot level or whether the contract was changed at this point.

"For the purpose of this litigation, the Court determines that the contract requirements were changed by Rogers and subsequently became an oral contract. The installation of the two 8-inch pumps failed to lower the table to the desired level once again. And at this time the plaintiff suggested installation of a well point system to dewater in the thrust block area. A series of interconnected well points were sunk in the thrust block area and proved successful in dewatering to the desired level together with the submersibles which had already been installed.

"The defendant Rogers paid a total of $14,089.12 which included the original contract price together with those items appearing at Exhibit 30 [materials required to drill and install the initial wells and 6-inch pumps] and an additional $3700.00 for the rental of the well point system which the plaintiff had procured through Stang Hydronics.

"The Court here finds the basic law to be that a contractor may recover the reasonable value of extra work which is necessary because of material changes made in the contract at the request of the owner. The plaintiff's evidence on many of the items termed extras is too sparse to meet the requirement of a preponderance of the evidence.

"The Court finds that recovery here must rest upon a quantum meruit and is limited to additional costs incurred which are proven to have been performed under authorization from Rogers.

"Under any quantum meruit theory, it is the Court's opinion that the law demands adequate proofs that the charges made were fair and reasonable. With respect to the two 8-inch pumps, the Court has looked for evidence and failed to find any which would indicate that Rogers was to purchase the pumps and the $10,412.52 for the sale of the pumps is disallowed

in the Court's analysis, the pumps themselves to be the property of the plaintiff and to be returned to the plaintiff with the costs of shipping to be paid by the plaintiff.

"In an analysis of the evidence, it is believed that the following items are supported therein and that evidence is sufficient to preponderate on a quantum meruit basis:

| | |
|---|---:|
| Truck Rental: | $ 304.80 |
| Labor: Regular - $1747.20 | |
| Overtime - 1094.37 | 2841.57 |
| Payments to Union for health & welfare and pension: | 400.00 |
| Fittings, parts & equipment: | 6311.12 |
| Fittings, parts & equipment: | 368.70 |
| Rental charge on drilling rig: | 3321.00 |
| | $13547.19 |

*"The parties in their presentation to the Court have submitted this under the claim 'extras' and not as a part of the contract of April 6, 1976. The Court is treating it in the same manner. It is the intention of the Court that the figure in the judgment not overlap any of the items paid under the contract of April 6th or the $3700.00 paid as rental payment on the dewatering system."* (Emphasis supplied.)

We note at the outset that the trial court entered judgment "against the defendants and each of them." Darin & Armstrong, Inc., the general contractor, was a named defendant in the lawsuit as originally filed. However, as previously mentioned, it was dismissed from the lawsuit on its motion prior to the trial of this action. Therefore, insofar as the judgment of the trial court might be interpreted as also being a judgment against Darin & Armstrong, it would obviously be incorrect; and the reference in the court's memorandum opinion to the effect that Rogers was a subcontractor to Darin & Armstrong, with no other findings as to the liability of Darin & Armstrong, would not be sufficient to constitute a judgment against Darin &

Armstrong, or render it liable thereunder. To clarify any possible misunderstanding in this regard, we find that the judgment entered by the trial court in this case does not constitute a judgment against Darin & Armstrong, and the assignment of error contained in the brief of appellees and cross-appellants (except Rogers) to the effect that the court erred in awarding judgment against Darin & Armstrong, Inc., because of its previous dismissal by the court as a party to the action, is correct, and the record should be corrected to reflect that fact.

The general rule which controls our review of this matter in this case is that the judgment of the trial court in an action at law where a jury has been waived has the effect of a verdict of a jury and will not be set aside unless clearly wrong. In determining the sufficiency of the evidence to sustain a judgment in a law action, it must be considered most favorably to the successful party, and every controverted fact must be resolved in that party's favor, and such party must have the benefit of any inferences reasonably deducible from it. *Knight Bros., Inc. v. State*, 189 Neb. 64, 199 N.W.2d 720 (1972). In such case, the verdict will not be disturbed on appeal unless clearly wrong. *Brandt v. Mayer*, 196 Neb. 751, 246 N.W.2d 203 (1976); *Siefford v. Housing Authority*, 192 Neb. 643, 223 N.W.2d 816 (1974); *Farmer's Union Co-op Company of Mead v. Flamme Brothers*, 196 Neb. 699, 245 N.W.2d 464 (1976).

As stated above, the bid submitted by Rieschick contains the language: "This bid is for completed well & pump installed & completely owned by C. J. Rogers. Any overtime or extra cost is billed to C. J. Rogers." It is undisputed that Rieschick received full payment as per the terms of its original contract, as well as payment for certain additional items as set out in exhibit 30, representing extra costs incurred in the installation of the original 6-inch pumps referred to. A review of the record in this case convinces us that

the action for the recovery of value of labor and materials not contemplated by the original contract was based upon the theory of such items clearly being "extras," and recovery therefor was allowed by the court on a quantum meruit basis. The case was tried on that theory by the parties, and the court so found in its judgment. The rule is well established in Nebraska that where a certain theory has been adopted and relied upon by the parties during the trial, such theory will be adhered to on appeal regardless of whether it is correct. *Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976); *Bohmont v. Moore*, 141 Neb. 91, 2 N.W.2d 599 (1942). We have also held that on appeal a case will be considered upon the theory upon which the case was tried below, even though not pleaded, where the parties have acquiesced in the theory and the case was submitted to the trial court on that basis. *Timmerman v. Hertz*, 195 Neb. 237, 238 N.W.2d 220 (1976). In *Meyer v. Moell*, 186 Neb. 397, 183 N.W.2d 480 (1971), we held that a party will not be permitted to change his theory on appeal. In the trial court's memorandum, accompanying its judgment entry, the court stated: "The parties in their presentation to the Court have submitted this under the claim of 'extras' and not as a part of the contract of April 6, 1976. The Court is treating it in the same manner." Under the rule stated above, we shall likewise do so. The court rendered judgment in favor of Rieschick for $13,547.19 for the items it found from the evidence constituted "extras" as set out in its memorandum opinion. We conclude there is evidence to support the court's findings in this regard, and that the court was not clearly wrong in so finding.

In this connection we discuss certain specific errors claimed by Rieschick in this regard. In its amended petition, Rieschick originally prayed for judgment in the amount of $42,230.57 with interest, costs, and attorney fees. The court awarded Rieschick judgment

in the sum of $13,547.19. The court also found that Rieschick's evidence on many of the items termed extras was too sparse to meet the requirement of a preponderance of the evidence. Rieschick has admitted that all the extra work incurred in the installation of the original pump system has been paid for by Rogers. With reference to the ownership of the two 8-inch submersible pumps, or the liability for payment to Rieschick for the value thereof, the court found that there was no support for Rieschick's contention that Rogers would own the pumps at the termination of the dewatering project. William Leoni, the president of Rogers, testified that no one at Rogers ever agreed to pay for the pumps. We conclude that the finding by the trial court that Rieschick had failed to prove that such pumps were to be owned by Rogers was not clearly erroneous, and that the pumps are being held for the benefit of Rieschick and subject to its disposition.

Rieschick also contends that there is due it the sum of $4,226 for costs of repairs to a mud pump. The court disallowed this item on the grounds that there was no evidence to show what repairs were actually performed on the mud pump or what the actual costs were in that regard.

Rieschick also claims that Rogers did not pay for the rental on the well point system in the amount of $3,700. The evidence reveals that Mr. Leoni, the president of Rogers, agreed to reimburse Rieschick for the costs of renting the well point system. The trial court found that Rogers had paid the $3,700, and specifically found that the award of $13,547.19 to Rieschick in the court's judgment should not overlap any of the extras Rogers had already paid for, or the $3,700 rental fee paid as rental payment on the dewatering system. The court was not clearly wrong on this item.

Defendant bonding companies contend that even if some of the judgment of the District Court is affirmed, there can be no judgment against Darin & Armstrong because that company was dismissed prior to trial.

We have previously agreed with that contention. They also contend, however, there can be no judgment against the bonding companies because there was no direct contract or dealings between Rieschick and the general contractor, Darin & Armstrong, and also because no proper statutory notice was given under § 52-118.01. With respect to the first contention, we note that that statute provides that "any person having direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing such bond shall have a right of action upon the bond upon giving written notice to the contractor within four months from the date on which such person did or performed the *last of the labor*, or furnished or supplied the *last of the material* for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." (Emphasis supplied.) In this case, although there was no contractual relationship between Darin & Armstrong and Rieschick, there were clearly direct dealings between the subcontractor, Rogers, and Rieschick. In this connection see *McElhose v. Universal Surety Co.*, 182 Neb. 847, 158 N.W.2d 228 (1968). The bonding companies also contend that notice, to be effective under the above statute, must be given with respect to every separate invoice submitted by Rieschick during the course of the performance or construction of the project. We do not believe this contention is supported by the language of the statute itself which provides for "a right of action upon the bond upon giving written notice to the contractor within four months from the date on which such person did or performed the *last of the labor*, or furnished or supplied the *last of the material* for which such claim is made . . . ." (Emphasis supplied.) We conclude that the District Court did not err in entering judgment not only against Rogers on quantum meruit but also

against the bonding companies on the statutory remedy on the bonds as provided under § 52-118.01.

Appellees also contend that there was insufficient evidence to establish the value of some of the materials and services involved in this appeal, and that mere invoices or statements showing the cost of such materials and services are insufficient to establish the fair and reasonable value thereof. While it may possibly be true that specific evidence of reasonable value was lacking with regard to some of the items for which an award was made, we do not believe this fact is necessarily determinative of Rieschick's right to recover for such items. In *Ritzau v. Wiebe Constr. Co.*, 191 Neb. 92, 97, 214 N.W.2d 244, 247-48 (1974), this court stated: "'There being no specific standard by which reasonable value of labor and materials furnished shall be proved, prima facie proof thereof is made where a reasonable inference of such value flows from the evidence adduced.'" We believe the court was not clearly wrong in determining the reasonable value of the items for which it awarded judgment under the evidence before it in the record.

Finally, we turn to what is probably Rieschick's main assignment of error in its appeal to this court, to wit, that the trial court erred in failing to award attorney fees pursuant to § 44-359. We note that it has, in its brief on appeal, placed this assignment at the top of its list of alleged errors. As previously stated, the trial court did not award Rieschick attorney fees in this action, although it did hold a separate hearing to consider the matter following the entry of the judgment itself. We believe the trial court erred in this determination and that Rieschick is entitled to an award of attorney fees under § 44-359, which reads in part as follows: "In all cases where the beneficiary, or other person entitled thereto, brings an action upon any type of insurance policy except workmen's compensation insurance, or upon any certificate issued by a fraternal beneficiary association, against any

company, person or association doing business in this state, the court, upon rendering judgment against such company, person or association, *shall* allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs." (Emphasis supplied.)

It is clear in this case that Rieschick did sue the bonding companies of the principal contractor, and recovered judgment against them. This court has previously held that the foregoing section is applicable to actions on performance bonds. *Omaha Home for Boys v. Stitt Constr. Co., Inc.*, 195 Neb. 422, 238 N.W.2d 470 (1976). See, also, *Reorganized Church of Jesus Christ v. Universal Surety Co.*, 177 Neb. 60, 128 N.W.2d 361 (1964). We have also held that the provision of § 44-359 with relation to the allowance of attorney fees is mandatory. *State ex rel. School Dist. v. Ellis*, 160 Neb. 400, 70 N.W.2d 320 (1955); *Dale Electronics, Inc. v. Federal Ins. Co.*, 205 Neb. 115, 286 N.W.2d 437 (1979). The amount of such fees to be allowed under the foregoing statute rests in the sound discretion of the court. *Herrera v. American Standard Ins. Co.*, 203 Neb. 477, 279 N.W.2d 140 (1979); *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968).

In view of what we have stated above, we conclude that the judgment of the District Court of Otoe County must be affirmed, but modified to exclude the application of such judgment to Darin & Armstrong, the principal contractor. We also remand the case to the District Court with directions to hold a hearing to determine the fair and reasonable amount of attorney fees to be awarded to Rieschick.

AFFIRMED AS MODIFIED, AND
REMANDED WITH DIRECTIONS.