Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

Echo Group, Inc., appellee and cross-appellant, v.
Tradesmen International, an Ohio corporation,
appellee, and Lund-Ross Constructors, Inc.,
a Nebraska corporation, intervenor-
appellant and cross-appellee.

Echo Group, Inc., appellee and cross-appellant, v.
The Historic Florentine, LLC, a Nebraska limited
liability company, and Midwest Protective
Services, Inc., appellees, and Lund-Ross
Constructors, Inc., a Nebraska corporation,
intervenor-appelllant and cross-appellee.

Echo Group, Inc., appellee and cross-appellant, v.
The Duke of Omaha, LLC, a Georgia limited
liability company, Great Western Bank and
Midwest Protection Services, Inc., appellees,
and Lund-Ross Constructors, Inc.,
a Nebraska corporation, intervenor-
appellant and cross-appellee.

___ N.W.2d ___

Filed October 28, 2022.    Nos. S-21-729, S-21-730, S-21-770.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.

4. **Liens: Foreclosure: Equity.** An action to foreclose a construction lien is one grounded in equity.

5. **Equity.** The maxim "equity follows the law" in its broad sense means that equity follows the law to the extent of obeying it and conforming to its general rules and policies whether contained in common law or statute. This maxim is strictly applicable whenever the rights of the parties are clearly defined and established by law.

6. ____. Equitable remedies are generally not available where there exists an adequate remedy at law.

7. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

8. **Summary Judgment.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.

9. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

10. **Principal and Surety: Bonds: Liens.** The function of the surety bond under Neb. Rev. Stat. § 52-142 (Reissue 2021) is to release the property from the lien and to transfer the claimant's rights from the property to the surety bond.

11. **Stipulations: Parties.** The general rule is that parties are bound by stipulations voluntarily made.

12. **Principal and Surety: Liability.** In the absence of a condition extending his or her liability, a surety cannot be held liable for more than the penal sum named.

13. **Prejudgment Interest: Appeal and Error.** Awards of prejudgment interest are reviewed de novo.

14. **Prejudgment Interest.** Neb. Rev. Stat. §§ 45-103.02 and 45-104 (Reissue 2021) provide alternate and independent means of recovering prejudgment interest.

15. ____. Neb. Rev. Stat. § 45-103.02(2) (Reissue 2021) authorizes the recovery of prejudgment interest on liquidated claims.

16. ____. When a claim is of the types enumerated in Neb. Rev. Stat. § 45-104 (Reissue 2021), then prejudgment interest may be recovered without regard to whether the claim is liquidated.

17. **Appeal and Error.** The district court cannot commit error in resolving an issue never presented and submitted to it for disposition.

18. **Prejudgment Interest.** Neb. Rev. Stat. § 45-104 (Reissue 2021) applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the account from the day the balance shall be agreed upon; (3) money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment.

19. **Prejudgment Interest: Liens: Foreclosure.** An award of prejudgment interest in an action to foreclose a construction lien is authorized under Neb. Rev. Stat. § 45-104 (Reissue 2021).

20. **Statutes: Words and Phrases.** As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.

21. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.

22. **Attorney Fees.** Attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

23. **Statutes: Legislature: Intent.** When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

24. **Statutes: Intent.** In construing a statute, the court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

25. **Appeal and Error.** Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of error" section of the brief and correspondingly argues in the argument section.

26. ____. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

Appeals from the District Court for Douglas County: J. MICHAEL COFFEY, LEIGH ANN RETELSDORF, and DUANE C.

Dougherty, Judges. Judgment in No. S-21-729 affirmed and in part reversed, and cause remanded with direction. Judgment in No. S-21-730 affirmed in part and in part reversed, and cause remanded with direction. Judgment in No. S-21-770 affirmed in part, and in part reversed.

David S. Houghton and Justin D. Eichmann, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellant.

Cathy S. Trent-Vilim and Craig F. Martin, of Lamson, Dugan & Murray, L.L.P., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

These three cases consolidated for appeal involve foreclosures of construction liens under the Nebraska Construction Lien Act (Act).[1] The appeals present three primary issues: whether equitable considerations make summary judgment improper, whether prejudgment interest is authorized, and whether attorney fees are recoverable.

Because there was no dispute that the supplier complied with the provisions of the Act and equity follows the law, we affirm the entry of summary judgment in each case.

We conclude that the claims were liquidated, and thus, an award of prejudgment interest was authorized. Because the court in two cases erred by not awarding prejudgment interest, we reverse the denial and remand to award such interest in conformity with this opinion.

Finally, we conclude that under the circumstances, there was no statutory authorization for an award of attorney fees. Thus, we reverse in part the judgment in two cases awarding attorney fees.

---

[1] Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 2021).

## II. BACKGROUND

### 1. Overview

We begin with a broad overview. These appeals arose from three construction-related projects. A general contractor entered into agreements with a subcontractor for performance of electrical work, and the subcontractor obtained electrical materials and equipment from a supplier. When the subcontractor failed to pay the supplier, the supplier filed construction liens. The supplier then sued the property owners to foreclose on the liens. The general contractor posted lien release bonds and intervened. Ultimately, the district court—through a different judge in each of the three cases—entered summary judgment in favor of the supplier. Two judgments overruled requests for prejudgment interest, one overruled a request for attorney fees, and one awarded both prejudgment interest and fees. These appeals followed.

### 2. Parties and Contracts

With that general understanding, we fill in the details. The general contractor, Lund-Ross Constructors Co. (Lund-Ross), was hired for the three projects involved in these appeals. The projects consisted of renovating common space at a senior living center, revamping an old apartment building into new apartments, and constructing a new apartment project, respectively.

Lund-Ross entered into contracts with Signature Electric, LLC (Signature), doing business as D&J Electric, for the performance of electrical work on the projects. Signature entered into agreements with Echo Group (Echo) to obtain electrical materials and equipment.

Generally, the subcontracts between Lund-Ross and Signature specified that Signature had the responsibility to pay all amounts owed to any suppliers it engaged. The subcontracts obligated Signature to furnish satisfactory evidence to Lund-Ross, "when and if required," that it did so. To receive monthly progress payments, Signature had to provide Lund-Ross with a completed lien waiver for all prior months' progress payments.

### 3. Progress Payments

Signature submitted monthly pay applications to Lund-Ross, requesting monthly progress payments for work completed and supplies purchased. Lund-Ross would remit payment to Signature, less an applicable retainage amount. Once Signature received payment, it submitted a partial lien waiver to Lund-Ross, attesting to Signature's payment of all suppliers up to the date of the lien waiver.

According to Lund-Ross' president, the lien waivers were of "critical importance." He explained that if Signature did not provide lien waivers for the previous month attesting to payment of suppliers, "Lund-Ross would then have known that there was a problem with Signature's payment of suppliers and Lund-Ross could have stopped making payments to Signature and made other arrangements to pay Signature's suppliers . . . directly or take other action to protect itself."

### 4. Construction Liens and Lawsuits

In July 2019, Signature abruptly ceased operations.

The next month, and in accordance with the Act, Echo recorded a construction lien in the office of the Douglas County register of deeds in each case in the amounts of $11,604.46, $32,781.03, and $296,407.73, respectively.

Echo presented demands to Lund-Ross for payment with respect to electrical supplies it furnished to Signature. Having received no payments, Echo filed lawsuits against the property owners to foreclose on the construction liens. The complaints also alleged unjust enrichment. Lund-Ross posted a surety bond in each case and moved to intervene.

After the court allowed Lund-Ross to intervene, Lund-Ross filed an answer setting forth numerous affirmative defenses. Among the affirmative defenses, Lund-Ross identified equitable doctrines of waiver, estoppel, laches, and unclean hands. Lund-Ross stipulated to the dismissal of each property owner. In case No. S-21-729, Lund-Ross stipulated that any judgment would be satisfied "by Lund-Ross or its bond." Similarly, in

case No. S-21-770, Lund-Ross stipulated that a final judgment would be satisfied "by Lund[-]Ross and/or its bond."

Echo subsequently moved for summary judgment. As discussed in more detail below, the court sustained the motion in each case.

## 5. DISTRICT COURT JUDGMENTS

The court entered summary judgment in Echo's favor on the foreclosure of a construction lien claim in each case. Thus, in case No. S-21-729, the court entered judgment in the amount of $11,604.46 against the bond posted by Lund-Ross, together with costs and postjudgment interest. In case No. S-21-730, the court entered judgment against the bond in the amount of "$32,871.03" (transposing the lien amount of $32,781.03), together with costs, attorney fees, and postjudgment interest. In case No. S-21-770, the court entered summary judgment against Lund-Ross in the amount of $296,407.73, plus prejudgment and postjudgment interest, costs, and attorney fees.

The orders further disposed of Echo's claims for unjust enrichment. In case No. S-21-729, the court found that claim should be dismissed with prejudice. In case No. S-21-730, the court sustained Echo's motion to dismiss that claim. And in case No. S-21-770, having determined that summary judgment was appropriate on the lien foreclosure claim, the court found it unnecessary to consider Echo's unjust enrichment claim.

Additional findings by the district court will be set forth as necessary in the analysis.

Lund-Ross filed a timely appeal in each case. The Nebraska Court of Appeals sustained Lund-Ross' motion to consolidate the appeals, and we subsequently moved them to our docket.[2]

## III. ASSIGNMENTS OF ERROR

Lund-Ross assigns five errors. In all three cases, it alleges that the district court erred in determining that no genuine issue

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

of material fact existed and in granting Echo summary judgment on its claims for construction lien foreclosure.

In two cases—cases Nos. S-21-730 and S-21-770—Lund-Ross alleges that the court erred in granting judgment in an amount greater than the surety bond posted by Lund-Ross.

In case No. S-21-770 only, Lund-Ross alleges that the court erred in (1) entering judgment for the excess amount directly against Lund-Ross, (2) awarding Echo prejudgment interest on its claim for construction lien foreclosure, and (3) awarding Echo attorney fees not actually incurred in pursuit of Echo's claim in the action pending before it.

On cross-appeal, Echo assigns that the court erred in cases Nos. S-21-729 and S-21-730 by denying prejudgment interest. It further assigns that the court erred in case No. S-21-729 by denying attorney fees.

## IV. STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[4]

[3] Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.[5]

These standards are central to our review. We set forth other applicable standards in the analysis.

---

[3] *Elbert v. Young, ante* p. 58, 977 N.W.2d 892 (2022).

[4] *Id.*

[5] *Ag Valley Co-op v. Servinsky Engr.*, 311 Neb. 665, 974 N.W.2d 324 (2022).

## V. ANALYSIS

### 1. Summary Judgment

Lund-Ross argues that the district court erred in granting summary judgment in three ways. In all three appeals, Lund-Ross claims that the court erred in entering summary judgment on the construction lien foreclosure claim without "balancing the equities."[6] In cases Nos. S-21-730 and S-21-770, Lund-Ross alleges the court erred by entering summary judgment in an amount greater than the surety bond it posted to release the real estate from the construction lien. In case No. S-21-770, Lund-Ross claims error with respect to the entry of judgment for the excess amount directly against Lund-Ross.

### (a) Balancing of Equities

With regard to summary judgment on the construction lien foreclosure claims, Lund-Ross does not dispute that Echo complied with the statutory requirements of the Act. But Lund-Ross argues that "the grant of such an equitable remedy also requires the trial court to first balance any equities supported by the parties' evidence."[7]

[4] It bases its argument on case law stating that an action to foreclose a construction lien is one grounded in equity.[8] From this general characterization of the nature of a construction lien foreclosure proceeding, it reasons that a balancing of equities—which, it argues, is inherent in an equity action—precludes granting summary judgment.

No Nebraska case law has addressed balancing of equities in a lien foreclosure action. Recognizing the same, Lund-Ross directs our attention to two cases to support its argument.

---

[6] Brief for appellant at 22.

[7] *Id.* at 21.

[8] See, e.g., *Goes v. Vogler*, 304 Neb. 848, 937 N.W.2d 190 (2020); *Lincoln Lumber Co. v. Lancaster*, 260 Neb. 585, 618 N.W.2d 676 (2000); *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794 (1994).

One case, an unpublished decision of the Iowa Court of Appeals,[9] involved a trial court's refusal to foreclose on a mechanic's lien based on equitable principles. The trial court had concluded that the contractor was largely responsible for creating the dispute due to its confusing and inaccurate billing. The Court of Appeals reasoned that although the contractor met the statutory requirements to foreclose on its lien, the appellate court had broad discretion in determining an equitable remedy and could consider the hardship its orders would cause the defendant.

The other case, a Nebraska case, involved whether to grant equitable relief in connection with allegations of ultra vires acts by insurance company officers.[10] There, we stated that "[i]n balancing equities, [a court] must take into consideration the good that may be done to those who have been wronged, against the evil that may befall innocent persons."[11] After noting that "if the plaintiff can be readily compensated in damages," we stated that "[c]ourts will balance equities and, where they are equal or predominate against him who seeks relief, equity will follow that rule."[12]

Neither case persuades us that the possibility of balancing equities in fashioning relief precludes a court from employing a summary judgment, at least where there are no factual disputes. The Nebraska precedent, in particular, differs significantly from the case before us. There, the plaintiffs primarily sought and received injunctive relief requiring that bonds and money removed from a fraternal benefit corporation and paid to an insurance company organized by officers of the fraternal benefit corporation be returned to that corporation, and

[9] *Olmstead Construction, Inc. v. Otter Creek Investments, LLC*, No. 18-1186, 2019 WL 4678167 (Iowa App. Sept. 25, 2019) (unpublished opinion listed in table of "Decisions Without Published Opinions" at 940 N.W.2d 44 (2019)).

[10] See *Folts v. Globe Life Ins. Co.*, 117 Neb. 723, 223 N.W. 797 (1929).

[11] *Id.* at 745, 223 N.W. at 806.

[12] *Id.*

precluding the individuals and corporate entities from using the fraternal benefit corporation's goodwill, property, or organization in the business of the insurance company. While an action for injunction sounds in equity[13] and an action to foreclose a construction lien is one grounded in equity,[14] the similarity ends there. In Nebraska, construction liens are largely governed by the Act.

[5,6] Long-established principles require a court in equity to implement these statutory provisions. The maxim "equity follows the law" in its broad sense means that equity follows the law to the extent of obeying it and conforming to its general rules and policies whether contained in common law or statute.[15] This maxim is strictly applicable whenever the rights of the parties are clearly defined and established by law.[16] And equitable remedies are generally not available where there exists an adequate remedy at law.[17] That is the case here. The Act sets forth a comprehensive statutory structure. By asking this court to balance the equities with respect to Echo's foreclosure requests, Lund-Ross seeks to inject something new into the Act.

[7] Even if it were appropriate to do so, Lund-Ross did not meet its burden to show the existence of a material issue of fact. The party moving for summary judgment must make a prima facie case by producing enough evidence to show that

---

[13] *County of Cedar v. Thelen*, 305 Neb. 351, 940 N.W.2d 521 (2020).

[14] *Goes v. Vogler, supra* note 8.

[15] *Guy Dean's Lake Shore Marina v. Ramey*, 246 Neb. 258, 518 N.W.2d 129 (1994). See, also, *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018); *Fisher v. Heirs & Devisees of T.D. Lovercheck*, 291 Neb. 9, 864 N.W.2d 212 (2015); *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012); *Doksansky v. Norwest Bank Neb.*, 260 Neb. 100, 615 N.W.2d 104 (2000); *Henry v. Rockey*, 246 Neb. 398, 518 N.W.2d 658 (1994).

[16] *Guy Dean's Lake Shore Marina v. Ramey, supra* note 15; *Wisner v. Vandelay Investments, supra* note 15; *Jeffrey B. v. Amy L., supra* note 15; *Doksansky v. Norwest Bank Neb., supra* note 15.

[17] *Wisner v. Vandelay Investments, supra* note 15.

the movant is entitled to judgment if the evidence were uncontroverted at trial. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[18] Echo met its initial burden, but Lund-Ross failed to meet its responsive burden.

Lund-Ross did not produce evidence to raise a genuine issue of material fact as to the equitable defenses it raised. There is no evidence that Echo had an obligation to bring payment issues to the attention of Lund-Ross or the property owner. Nor is there evidence that Lund-Ross asked for lien waivers from any of the suppliers. Although Lund-Ross asserts that Echo "slept on [its] rights and waited over the course of more than half [a] year to make [its] claim,"[19] Echo timely filed its liens and sought foreclosure in accordance with the provisions of the Act.

[8] At oral argument, Lund-Ross asserted that the equitable considerations it advanced should be heard at trial. It explained that a trial would allow a fuller exploration and further development of facts. But the time to show a genuine dispute regarding any material fact was at the summary judgment stage. At that stage, Lund-Ross could produce "depositions, answers to interrogatories, admissions, stipulations, and affidavits"[20] to support its equitable defenses. Instead, Lund-Ross essentially relied on inferences based on speculation. Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.[21]

As noted, there is no dispute that Echo complied with the statutory requirements of the Act with respect to its construction lien foreclosure claims. The district court correctly

[18] *Ag Valley Co-op v. Servinsky Engr., supra* note 5.

[19] Brief for appellant at 28.

[20] Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2020).

[21] *Ag Valley Co-op v. Servinsky Engr., supra* note 5.

followed the law and had no need in this instance to "balance any equities."

(b) Award Greater Than Surety Bond

Lund-Ross argues that in cases Nos. S-21-730 and S-21-770, the district court erred by entering judgment in excess of the surety bond. Lund-Ross contends that the Act defines the remedy for a successful lien claim. So we turn to the Act.

The Act speaks to the procedure to release a lien. Under § 52-142(1)(a), a person may release real estate from a lien by depositing "money in cash, certified check, or other bank obligation, or a surety bond . . . , in an amount sufficient to pay the total of the amounts claimed in the liens being released plus fifteen percent of such total." Upon such release, "the claimant's rights are transferred from the real estate to the deposit or surety bond."[22] Once the court determines the claim, it "shall order the clerk of the district court to pay the sums due or render judgment against the surety company on the bond, as the case may be."[23] Lund-Ross homes in on the latter language, contending that "the limit of any possible recovery by Echo . . . is a judgment rendered against the surety company on the bond deposited."[24] It asserts, without citation to authority, that the total judgment cannot exceed the bond amount. We disagree.

[9] The plain language of the Act does not contain a limit on the amount of recovery. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[25] The Act provides that a person furnishing materials has a construction lien "to secure the payment of his or her contract price."[26] Contract

---

[22] § 52-142(3).

[23] *Id.*

[24] Brief for appellant at 30.

[25] *In re Guardianship of Jill G., ante* p. 108, 977 N.W.2d 913 (2022).

[26] § 52-131(1).

price is defined as "the amount agreed upon by the contracting parties for performing services and furnishing materials covered by the contract" as increased or diminished by certain matters; however, "[i]f no price is agreed upon by the contracting parties, contract price shall mean the reasonable value of all services or materials covered by the contract."[27] The amount of the lien is specified by § 52-136,[28] which provides, under the circumstances here, that the lien is for the amount unpaid under Echo's contract.[29]

Provisions within the Act authorize recovery of amounts in addition to the amount of the lien and, thus, may be in addition to the amount of the bond. One statute[30] mandates an award to the prevailing party of reasonable attorney fees and court costs if a claimant has a claim under a bond procured by an owner or prime contractor from a surety company in the penal sum set forth in § 52-141(3). Another makes a person who fails to furnish information required by § 52-143 liable to the requesting party for actual damages or $200 as liquidated damages.[31] A third statute makes a claimant who fails to send a copy of the recording of a notice of commencement to the contracting owner liable to the contracting owner for any damages caused by that failure.[32] A fourth statute provides that if a person is wrongfully deprived of benefits or if a claimant acts in bad faith, damages, including the costs of correcting the record and reasonable attorney, fees may be awarded.[33] Nothing within the Act limits these additional amounts to 15 percent of the amount claimed in the lien.[34]

---

[27] § 52-127(2).

[28] § 52-131(4).

[29] See § 52-136(2)(a).

[30] § 52-141(6).

[31] § 52-143(3).

[32] § 52-145(6).

[33] See § 52-157.

[34] See § 52-142(1)(a).

[10] The language of the Act demonstrates that the function of the surety bond under § 52-142 is to release the property from the lien and to transfer the claimant's rights from the property to the surety bond. It is simply a matter of substitution of collateral.[35] The shifting of the lien from the property to the bond substitute does not create a limit on recovery that would not otherwise exist. Where recovery of amounts in excess of the lien amount is permitted, it is not error to enter judgment in an amount greater than the amount of the surety bond.

### (c) Judgment Directly Against Lund-Ross

Lund-Ross further contends that in case No. S-21-770, the court erred by assessing the judgment in excess of the posted surety bond—an additional $69,524.86—directly against Lund-Ross. The district court reasoned that under § 52-142, it was discretionary to the court whether to render judgment against the surety company or simply order the clerk of the district court to pay the bond out to Echo. The court declared that any remaining amount due on the judgment—which included prejudgment interest, attorney fees, and costs—was the sole responsibility and obligation of Lund-Ross. Lund-Ross argues that any judgment against it—as opposed to the surety per § 52-142(3)—was error. We disagree for several reasons.

First, we reject Lund-Ross' assertion that judgment could not be entered against it because "Echo's pleadings are entirely devoid of any claims asserted against Lund-Ross."[36] In case No. S-21-770, Echo sued the property owner and two corporations having an interest in the property, seeking to foreclose on its construction lien. Subsequently, Lund-Ross deposited a surety bond and moved to intervene. As Lund-Ross recognized in its motion—and as set forth in the discussion above—upon release of the construction lien, Echo's rights were transferred from the property to the surety bond. The bond to release the

---

[35] See § 52-151(1).

[36] Brief for appellant at 30.

lien identified Lund-Ross as "Principal" and Western Surety Company as "Surety," and they bound themselves "jointly and severally" to Echo. Lund-Ross cites no authority for the proposition that the liability of the principal on a surety bond is limited to the penal sum.

[11] Second, Lund-Ross is obligated by its stipulation. The general rule is that parties are bound by stipulations voluntarily made.[37] Lund-Ross stipulated that the property owner should be dismissed as a party and that "to the extent [Echo] obtains a final judgment, it will be satisfied by Lund[-]Ross and/or its bond."

[12] Third, a surety generally cannot be held liable for an amount greater than the bond. "[I]n the absence of a condition extending his or her liability, a surety cannot be held liable for more than the penal sum named."[38] Although this bond was not a surety bond meeting the requirements of § 52-141, that statute conveys the same general rule: "The bond must obligate the surety company, to the extent of the penal sum of the bond"[39] and "the total liability of the surety may not exceed the penal sum of the bond."[40] This means that liability for any amount in excess of the bond falls to Lund-Ross.

For all these reasons, we find no error by the court in assessing the judgment in excess of the posted surety bond directly against Lund-Ross.

## 2. PREJUDGMENT INTEREST

### (a) Standard of Review

[13] Awards of prejudgment interest are reviewed de novo.[41]

---

[37] *Lincoln Lumber Co. v. Lancaster, supra* note 8.

[38] 11 C.J.S. *Bonds* § 55 at 43 (2019).

[39] § 52-141(2).

[40] § 52-141(7).

[41] *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021).

### (b) Additional Facts and Findings

In all three cases, Echo requested prejudgment interest under Neb. Rev. Stat. § 45-104 (Reissue 2021) only. In case No. S-21-729, the court did not explicitly rule on Echo's request for prejudgment interest. In case No. S-21-730, the court disagreed that Echo's construction lien was an instrument in writing envisioned by § 45-104. Thus, it denied Echo's request for prejudgment interest under that statute.

In case No. S-21-770, the court found that Echo was entitled to prejudgment interest under § 45-104. It determined that the construction lien itself qualified under § 45-104 as "'money due on an instrument in writing.'" The court further found that Echo was entitled to prejudgment interest under the provision of § 45-104 allowing interest on "'money loaned or due and withheld by unreasonable delay of payment.'" Accordingly, the court determined that Echo was entitled to prejudgment interest of $71,910.72, for the period beginning on the date Echo recorded the construction lien.

### (c) Discussion

Both parties assign error with respect to prejudgment interest. Lund-Ross claims that the court erred by awarding Echo prejudgment interest in case No. S-21-770. On cross-appeal, Echo assigns that the court erred by denying it prejudgment interest in cases Nos. S-21-729 and S-21-730.

[14-16] On appeal, Echo contends that in addition to § 45-104, Neb. Rev. Stat. § 45-103.02(2) (Reissue 2021) also authorized an award of prejudgment interest. Sections 45-103.02 and 45-104 provide alternate and independent means of recovering prejudgment interest.[42] Section 45-103.02(2) authorizes the recovery of prejudgment interest on liquidated claims.[43] When a claim is of the types enumerated in § 45-104, then prejudgment interest may be recovered without regard to

---

[42] *Id.*

[43] See *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

whether the claim is liquidated.[44] Although Echo did not identify § 45-103.02(2) as a basis for prejudgment interest before the district court, the issue of prejudgment interest "as provided in [§] 45-104"[45] was clearly raised. We look to both statutes.

### (i) § 45-103.02(2)

[17] As noted, the record from the district court proceedings does not reflect that Echo ever mentioned § 45-103.02(2) as a basis for prejudgment interest. The district court cannot commit error in resolving an issue never presented and submitted to it for disposition.[46] Thus, in cases Nos. S-21-729 and S-21-730—where the court found no entitlement to prejudgment interest—we find no error in failing to award interest under § 45-103.02(2).

As to case No. S-21-770, where the court awarded prejudgment interest under § 45-104, we merely observe that § 45-103.02(2) supplies another basis for such an award. Section 45-103.02(2) states that "[e]xcept as provided in section 45-103.04, interest as provided in section 45-104 shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the entry of judgment."

Here, Echo's claim was liquidated. For a claim to be liquidated, a dispute must not exist either to the amount due or to the plaintiff's right to recover.[47] Lund-Ross admitted each of Echo's statements of undisputed fact. Thus, it admitted the balances that Echo asserted remained unpaid. We note that in three cases involving the foreclosure of a mechanic's lien, terminology predating the Act,[48] our opinion referenced § 45-103.02 but disallowed interest because the claim was

---

[44] *Id.*

[45] § 45-103.02(2).

[46] *Walsh v. State*, 276 Neb. 1034, 759 N.W.2d 100 (2009).

[47] See *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269 Neb. 692, 695 N.W.2d 665 (2005).

[48] See § 52-159 (substituting "construction lien" for "mechanic's lien").

unliquidated.[49] That is not the case here. Thus, it appears that § 45-103.02(2) would have provided a perhaps clearer basis for prejudgment interest.

### (ii) § 45-104

[18] We now turn to § 45-104, which the court in case No. S-21-770 used as the statutory basis for its award of prejudgment interest. Section 45-104 applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the account from the day the balance shall be agreed upon; (3) money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment.[50]

Lund-Ross advances several reasons in support of its belief that prejudgment interest is unavailable. It argues that the only relevant instrument in writing would be the material contract between Echo and Signature, but that no such contract is in evidence and that Echo did not sue Signature. Lund-Ross also points to the lack of any instrument in writing between Echo and the project owners. It further argues that the construction lien itself does not create the obligation to the claimant; rather, the lien provides a remedy.

The plain language of the statute provides insight. As set forth above, interest shall be allowed "on money due on any instrument in writing."[51] An "instrument" is "[a]n object, device, or apparatus designed or used for a particular purpose or task."[52] An alternative definition, specific to the legal realm,

---

[49] See, *Payless Bldg. Ctr. v. Wilmoth*, 254 Neb. 998, 581 N.W.2d 420 (1998); *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995); *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993).

[50] *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

[51] § 45-104.

[52] See "Instrument," Oxford English Dictionary Online, https://www.oed.com/view/Entry/97158 (last visited Oct. 24, 2022).

is "[a] formal legal document entailing rights and obligations, such as a contract, deed, legislative act, etc.; any document formally drawn up so as to have legal effect."[53] A construction lien fits within these definitions. That leads to the next question: Is money due on the lien? Because the right to recover money that was due on an underlying contract has essentially transferred to the lien, the answer is yes.

Further, this court has previously allowed prejudgment interest under § 45-104 in connection with mechanics' liens. In *Walker v. Collins Construction Co.*,[54] we cited Comp. Stat. § 45-104 (1929) and stated that "where a lien is claimed for an account for material and labor furnished for the construction of a building, in the absence of an agreement to the contrary, interest may be reckoned only from a date six months after the last item."[55] We thus allowed prejudgment interest to the extent that lienors were entitled to liens. In *O'Keefe Elevator v. Second Ave. Properties*,[56] we determined that a party who brought an action to foreclose its mechanic's lien was entitled to prejudgment interest under § 45-104 because money was "'due and withheld by unreasonable delay of payment.'"

[19] We conclude an award of prejudgment interest in an action to foreclose a construction lien is authorized under § 45-104. At oral argument, counsel for Echo provided no rationale for interest to begin running before the filing of the lien. We agree that any prejudgment interest would begin running on the date of recording the construction lien. That is the date used by the district court in case No. S-21-770, and we affirm its award of prejudgment interest.

[20] In connection with Echo's cross-appeal, we conclude that the court in cases Nos. S-21-729 and S-21-730 erred by

---

[53] *Id.*

[54] *Walker v. Collins Construction Co.*, 121 Neb. 157, 236 N.W. 334 (1931).

[55] *Id.* at 160, 236 N.W. at 336.

[56] *O'Keefe Elevator v. Second Ave. Properties*, 216 Neb. 170, 175, 343 N.W.2d 54, 57 (1984), *disapproved in part on other grounds, Weyh v. Gottsch, supra* note 43.

denying prejudgment interest. Section 45-104 specifies that "interest shall be allowed." As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.[57] We therefore reverse the denial of prejudgment interest and remand cases Nos. S-21-729 and S-21-730 to the district court with direction to award such interest in conformity with this opinion.

### 3. ATTORNEY FEES

### (a) Standard of Review

[21] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[58]

We turn to the issues raised by the parties in cases Nos. S-21-729 and S-21-770.

### (b) Case No. S-21-729

[22] In case No. S-21-729, the court overruled Echo's request for attorney fees. On cross-appeal, Echo assigns error to that denial. As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[59] Echo claims attorney fees were appropriate under two statutes, one—§ 52-157(3)—contained within the Act, and the other— Neb. Rev. Stat. § 44-359 (Reissue 2021)—found in the chapter of the Nebraska Revised Statutes addressing insurance. We examine each statute.

### (i) § 52-157

Echo contends that § 52-157(3) permitted an award of attorney fees. After recalling principles of statutory construction, we examine the language of the statute.

---

[57] *Signal 88 v. Lyconic*, 310 Neb. 824, 969 N.W.2d 651 (2022).

[58] *McGill Restoration v. Lion Place Condo. Assn., supra* note 41.

[59] *North Star Mut. Ins. Co. v. Miller*, 311 Neb. 941, 977 N.W.2d 195 (2022).

[23,24] When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[60] In construing a statute, the court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[61]

Section 52-157 is titled "Remedies for wrongful conduct." Although a section head or title does not constitute any part of the law,[62] the title fits the statutory language. The first subsection authorizes damages "[i]f a person is *wrongfully deprived* of benefits to which he or she is entitled under [the Act] by conduct other than that described in section 52-156."[63] The second subsection authorizes damages "[i]f *in bad faith* a claimant records a lien, overstates the amount for which he or she is entitled to a lien, or refuses to execute a release of a lien."[64] The third and final subsection specifies that damages awarded under § 52-157 "may include the costs of correcting the record and reasonable attorney's fees."[65]

We do not interpret § 52-157 as authorizing attorney fees in every action involving foreclosure of a construction lien. Notably, the statute authorizes fees as part of "[d]amages awarded under this *section*."[66] We do not read this language as authorizing a fee award to a prevailing party for any action under the Act.

---

[60] *Ag Valley Co-op v. Servinsky Engr., supra* note 5.

[61] *Id.*

[62] Neb. Rev. Stat. § 49-802(8) (Reissue 2021).

[63] § 52-157(1) (emphasis supplied).

[64] § 52-157(2) (emphasis supplied).

[65] § 52-157(3).

[66] *Id.* (emphasis supplied).

This reading of the statute is consistent with the comments to a uniform act. Nebraska's Act is based on the Uniform Simplification of Land Transfers Act.[67] A comment to the section of that uniform act which corresponds to § 52-157 provides examples of wrongful deprivation which would lead to liability under the section:

(1) owner contracts under incorrect name so that claimants are misled as to name in which real estate is held which causes them to record under incorrect name with resulting failure to secure priority against a third party; (2) prime contractor furnishes incorrect owner name with same result; (3) owner or prime contractor furnishes incorrect description of real estate with resultant mistaken recording by claimant; (4) misstatement by prime contractor as to amount of contract price or payment thereof which induces claimants not to record lien; (5) false or bad faith determination of damages from a prime contractor's breach which reduces the owner's lien liability.[68]

The comment demonstrates that wrongful deprivation requires something more than merely having to foreclose on a construction lien. And here, Echo has not alleged conduct similar to that set forth in the comment. Instead, Echo highlights that there was no genuine dispute as to the amount of its claim or its right of recovery.

We cannot say that Echo was *wrongfully* deprived of benefits under the Act. The Act authorized Echo to obtain a construction lien, which Echo obtained. The Act authorized foreclosure of a lien, which Echo pursued. Echo alleged no wrongful conduct by Lund-Ross. In a case where a contractor successfully foreclosed a construction lien, we stated that the contractor received all of the benefits to which it was entitled under the

[67] See *Lincoln Lumber Co. v. Lancaster, supra* note 8.

[68] Unif. Simplification of Land Transfers Act § 5-403, comment 1, 14 U.L.A. 564 (2021).

Act and, thus, was not entitled to relief under § 52-157.[69] To the extent a decision by the Nebraska Court of Appeals[70] can be read as authorization for attorney fees under § 52-157 wherever a party prevails on a construction lien claim and foreclosure, we disapprove it.

Accordingly, we find no error by the court in failing to award attorney fees under § 52-157 in case No. S-21-729. Next, we turn to the other statute that Echo contends authorized an award of attorney fees.

### (ii) § 44-359

Echo argues that attorney fees were mandated under § 44-359. That statute states:

> In all cases when the beneficiary or other person entitled thereto *brings an action upon any type of insurance policy*, except workers' compensation insurance, or upon any certificate issued by a fraternal benefit society, against any company, person, or association doing business in this state, the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs. If such cause is appealed, the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings, except that if the plaintiff fails to obtain judgment for more than may have been offered by such company, person, or association in accordance with section 25-901, then the plaintiff shall not recover the attorney's fee provided by this section.[71]

---

[69] See *Tilt-Up Concrete v. Star City/Federal*, 261 Neb. 64, 621 N.W.2d 502 (2001).

[70] See *Model Interiors v. 2566 Leavenworth, LLC*, 19 Neb. App. 56, 809 N.W.2d 775 (2011).

[71] § 44-359 (emphasis supplied).

Echo argues that a surety bond is an insurance policy for purposes of § 44-359. We need not decide that issue here. There is a fatal flaw to Echo's argument.

The flaw is that Echo did not "bring[] an action upon" the surety bond. Echo brought an action to foreclose its construction lien. It was not until 2 months later that Lund-Ross obtained the surety bond to substitute as collateral. And the surety company was never brought in as a party in these proceedings.

Echo argues that once it posted the lien release bond, thereby transferring its claims from the property to the bond, the action became one on the bond. We disagree. Had Lund-Ross instead deposited "a sum of money in cash, certified check, or other bank obligation"[72] to release the real estate from the lien, we would not term the action as one on a deposit. The shifting of the lien from the property to the collateral substitute does not create an entitlement to attorney fees that would not otherwise exist.

Cases involving bonds where we have allowed attorney fees under § 44-359 demonstrate the contrast in circumstances. We allowed attorney fees under a predecessor statute[73] to § 44-359 when a plaintiff sued a surety company which was the surety on a bond.[74] In other words, the plaintiff brought an action upon the surety bond. Similarly, we allowed fees under § 44-359 in a suit against an insurance company for recovery under a motor vehicle dealer's bond where the insurance company was the surety.[75] In a case where a drilling company sued a subcontractor and the bonding companies for the general contractor, we determined that attorney fees were authorized

---

[72] § 52-142(1)(a).

[73] See Comp. Stat. § 44-346 (1929).

[74] See *City of Scottsbluff v. Southern Surety Co.*, 124 Neb. 260, 246 N.W. 346 (1933).

[75] See *Adams Bank & Trust v. Empire Fire & Marine Ins. Co.*, 244 Neb. 262, 506 N.W.2d 52 (1993).

under § 44-359.[76] We explained, "It is clear in this case that [the drilling company] did sue the bonding companies of the principal contractor, and recovered judgment against them."[77] But that is not the situation before us. We conclude that fees are not authorized under § 44-359.

As an aside, we note that similar to § 44-359, a statute within the Act[78] mandates attorney fees for a judicial proceeding brought on a surety bond. When the requirements of § 52-141 are met, no construction lien attaches to the real estate and a claimant may proceed directly against the surety. But no one contends that § 52-141 has application here, and we conclude that it is not implicated.

In case No. S-21-729, we find no error by the court in not awarding attorney fees.

### (c) Case No. S-21-770

#### (i) Additional Facts and Findings

With respect to attorney fees, an attorney representing Echo submitted an affidavit stating that a significant portion of the work performed was applicable in all three cases, particularly briefing, discovery, and a deposition. The attorney proposed "accumulat[ing] all time and apply[ing] it to each based on the pro rata share of the demand." Echo set forth a table showing the demand in each case and the corresponding pro rata share of the demand. It showed that in case No. S-21-770, the demand was $296,407.73 and the pro rata share was 87 percent. In case No. S-21-730, the demand was $32,781.03, so the pro rata share was 9.6 percent. In case No. S-21-729, the demand was $11,604.46, making the pro rata share 3.4 percent. According to the affidavit, the total fees incurred for all three cases against Lund-Ross amounted to $41,607.50;

---

[76] *Rieschick Drilling Co. v. American Cas. Co.*, 208 Neb. 142, 303 N.W.2d 264 (1981).

[77] *Id.* at 154, 303 N.W.2d at 271.

[78] § 52-141(6).

thus, the pro rata share of fees for case No. S-21-770 totaled $36,198.53. A document showing all time entries incurred in the three cases was attached to the affidavit.

The court found Echo's methodology to be appropriate and awarded Echo attorney fees pursuant to § 52-157(3). The court agreed with Echo that § 44-359 provided an additional legal basis for attorney fees, reasoning that the surety bond qualified as an insurance policy under § 44-359 and that Echo was a beneficiary to that surety bond. Although the court stated that it awarded Echo $36,198.53 in attorney fees, when it specifically set forth the final judgment, the court awarded attorney fees of $41,607.50—the total for all three cases.

### (ii) Discussion

On appeal, Lund-Ross argues that the court erred in case No. S-21-770 by awarding fees because (1) it awarded the fees incurred in all three cases rather than the proportionate share requested and (2) it awarded fees incurred entirely in separate matters. Echo does not dispute that the court's order contained the errors alleged.

[25,26] Lund-Ross does not allege or argue that the attorney fee award was not statutorily authorized. Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of error" section of the brief and correspondingly argues in the argument section.[79] But because we above concluded that neither § 44-359 nor § 52-157 authorized the award of attorney fees under the circumstances, allowing the award to stand would constitute plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[80] We therefore reverse the award of attorney fees in case No. S-21-770.

---

[79] *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018).

[80] *North Star Mut. Ins. Co. v. Miller, supra* note 59.

### (d) Case No. S-21-730

In case No. S-21-730, the district court awarded attorney fees of $3,994.32 under § 52-157(3). Although neither party challenged the award on appeal, we must reverse it. For the same reasons discussed above, the award under § 52-157(3) was erroneous and allowing it to stand would be plain error. Accordingly, we reverse the award of attorney fees in case No. S-21-730.

## VI. CONCLUSION

In all three appeals, we find no abuse of discretion by the court in entering summary judgment and not granting equitable relief. In cases Nos. S-21-730 and S-21-770, we find no error by the court in entering judgment in an amount greater than the amount of the surety bond. And in case No. S-21-770, we conclude that the court did not err in assessing judgment in excess of the posted surety bond against Lund-Ross.

We conclude that prejudgment interest in an action to foreclose a construction lien is authorized under § 45-104. Thus, in cases Nos. S-21-729 and S-21-730, we reverse the denial and remand with direction to award prejudgment interest in conformity with this opinion.

Finally, we determine that neither § 44-359 nor § 52-157 authorize attorney fees under the circumstances presented in these cases. We therefore reverse the award of such fees in cases Nos. S-21-730 and S-21-770.

JUDGMENT IN NO. S-21-729 AFFIRMED IN PART AND IN PART REVERSED, AND CAUSE REMANDED WITH DIRECTION.

JUDGMENT IN NO. S-21-730 AFFIRMED IN PART AND IN PART REVERSED, AND CAUSE REMANDED WITH DIRECTION.

JUDGMENT IN NO. S-21-770 AFFIRMED IN PART AND IN PART REVERSED.